RECEIVED
USDC CLERK, FLORENCE, SC

2023 JUL 18  PM 1:06

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

|  |  |
|---|---|
| **BRAD R. JOHNSON,** | } |
| **Plaintiff,** | } |
| **v.** | } |
| **PENNYMAC LOAN SERVICES, LLC,** | } |
| **and** | } |
| **BLANCO TACKABERY & MATAMOROS, PA,** | } |
| **Defendants.** | } |

FILE NO.

### PLAINTIFF JOHNSON'S VERIFIED ORIGINAL COMPLAINT

NOW COMES Plaintiff, Brad R. Johnson ("Johnson"), for the sole purpose of complaining against Defendants, PennyMac Loan Services, LLC ("PennyMac") and Blanco Tackabery & Matamoros, PA. ("Blanco"). In that regard, Johnson alleges on knowledge, with respect to himself and his own conduct, and upon the basis of information and belief, as to all other matters, as follows.

### NATURE OF THE COUNTERCLAIMS

1. Count I of this Complaint is a *Breach of Contract Accompanied by Fraudulent Act* claim against PennyMac and Blanco under the laws of the state of South Carolina. Count II of this Complaint is a claim for *Fraud in the Inducement to Enter a Unilateral Contract* against PennyMac and Blanco under the laws of the state of South Carolina. Count III of this

Complaint is a common law *Abuse of Process* tort claim against PennyMac and Blanco arising out of PennyMac's (and Blanco's) misuse or misapplication of the 2020 equitable action against Johnson, a South Carolina legal resident, for the *Equitable Reformation* of a 2013 Deed of Trust, an action initiated and executed by PennyMac (and Blanco) for foreign collateral purposes (i.e., purposes not within the normal scope of reformation actions), including:

(a) coercing Johnson to pay a debt for which Johnson was not responsible and then unlawfully seizing Johnson's money to pay for void, lender force-placed insurance (FPI), unlawfully obtained by PennyMac from Standard Guaranty Insurance Company ("SGIC") through Assurant, Inc. ("Assurant"), and

(b) using the existence of PennyMac's 2020 *Equitable Reformation* action against Johnson to-

   (i) issue a Notice of Lis Pendens, thereby clouding Johnson's clear title to Lots 16&18, which restricts Johnson's subsequent sale, gift or encumbrance of said property and generally oppresses Johnson,

   (ii) interfere with Johnson's beneficial interest in (and control over) his real property (Lots 16&18), thereby gaining an advantage over such property, and

   (iii) compel Johnson to pay-off the balance of the PennyMac Note, an act that Johnson could not be legally and regularly compelled to do.

Count IV of this Complaint is a common law *Malicious Prosecution* tort claim against PennyMac and Blanco arising from:

   (a) PennyMac's (and Blanco's) initiation of its 2020 equitable action against Johnson for the *Equitable Reformation* of a 2013 Deed of Trust,

(b) where PennyMac (and Blanco) initiated such action against Johnson maliciously (the 2020 equitable action against Johnson for the *Equitable Reformation* of a 2013 Deed of Trust was initiated to coerce Johnson to pay a debt for which Johnson was not responsible, wherein PennyMac's (and Blanco's) conduct was a clear abuse of PennyMac's (and Blanco's) position of power and an exploitation of Johnson's position of weakness),

(c) where PennyMac (and Blanco) initiated such action against Johnson without probable cause,

(d) where such action was terminated in Johnson's favor and

(e) where Johnson suffered special damages (e.g., (i) the unlawful overt seizure of Johnson's money, (ii) Johnson's substantial loss of the beneficial interest in (and control over) Johnson's real property (Lots 16 & 18), resulting from PennyMac's (and Blanco's) interference and issuance of a Notice of Lis Pendens, and (iii) Johnson's substantial increase in interest payments resulting from the loss of a low interest rate on borrowed funds, resulting directly from PennyMac's (and Blanco's) issuance of a Notice of Lis Pendens.

Count V of this Complaint is a claim against PennyMac for unfair or deceptive trade practices pursuant to N.C.G.S. §75-1.1, *et al.* ("NCUDTP").

## PARTIES

2. **Defendants**.

    (a) **PennyMac Loan Services, LLC.** PennyMac is a Delaware limited liability company, with its principal office located at 3043 Townsgate Road in Westlake Village, CA 91361. PennyMac's sole member is Private National Mortgage Acceptance Company, LLC (PNMAC). PNMAC has 2 members: PNMAC Holdings, Inc. (HOLDINGS) and PennyMac Financial Services, Inc. (PFSI). HOLDINGS is a Delaware corporation residing in Delaware and California and not in South Carolina. PFSI is a Delaware publicly held corporation residing in Delaware and California and not in South Carolina. On 11/1/2018, PennyMac Financial Services, Inc. (PFSI) changed its name to PNMAC Holdings, Inc. (HOLDINGS). PennyMac is in the business of loan services.

As a collective entity, PennyMac, acts only through its agents and, hence, is liable for the statements or wrongful acts of its agents and employees, when they are acting within the scope of their authority or the course of their employment. Also, PennyMac is affected with constructive knowledge of all material facts of which an employee/agent acquires knowledge, while acting in the course of his/her employment and within the scope of his/her authority. This compartmentalized structure is common to all large organizations, including PennyMac. In particular, PennyMac compartmentalizes knowledge, subdividing the elements of specific duties and operations into smaller components (e.g., Escrow department, Insurance Area). Because PennyMac has this compartmentalized structure that is common to all large corporations, the aggregate of these components constitutes PennyMac's knowledge of a particular operation. It is irrelevant whether

employees administering one component of an operation know the specific activities of other employees administering other aspects of the operation.

PennyMac is a mortgage service provider. Force-placing insurance is a lucrative business for mortgage lenders and servicers (referred to generically as lenders). As a mortgage service provider, by contract, PennyMac outsources the tracking and processing of lender forced-placed insurance (FPI), both hazard and flood insurance, to Assurant, Inc. ("Assurant"). Accordingly, PennyMac is a client of Assurant. As a result, by contract, Assurant has the exclusive right to place the FPI, both hazard and flood insurance, in every instance in which one of the borrowers of PennyMac violates a Deed of Trust and fails to properly insure the improvements on Property, secured by said Deed of Trust in which PennyMac has a beneficial interest. In the case of PennyMac, Assurant causes an insurance subsidiary (Standard Guaranty Insurance Company ("SGIC")) to issue FPI, both hazard and flood insurance to PennyMac, in instances where one of the borrowers of PennyMac violates a Deed of Trust and fails to properly insure the improvements on Property, secured by said Deed of Trust in which PennyMac has a beneficial interest. When SGIC issues FBI to PennyMac, PennyMac receives a kickback, commission, qualified expense reimbursement, or other compensation (e.g., subsidized insurance tracking services). PennyMac also charges the borrower with the "cost" of such FPI, the cost of which is exclusively established by Assurant.

(b) **Blanco Tackabery & Matamoros, P.A.**. Blanco was organized in North Carolina and is a full-service North Carolina law firm operating as a professional association. Blanco's physical address is 404 N. Marshall Street, Winston-Salem, NC 27101. As a collective entity, Blanco acts only through its agents (e.g. Chad Archer ("Archer") and, hence, is

liable for the statements or wrongful acts of its agents and employees (e.g., Archer), when they are acting within the scope of their authority or the course of their employment. Also, Blanco is affected with constructive knowledge of all material facts of which an employee/agent (e.g., Archer) acquires knowledge, while acting in the course of his/her employment and within the scope of his/her authority.

Blanco has represented PennyMac in many legal matters and, in particular, represented PennyMac in its lawsuit against Johnson and his wife for the reformation of a 2013 Deed of Trust (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)), which was filed January 21, 2020 and Voluntarily Dismissed *without* Prejudice on March 10, 2023. Accordingly, with respect to all matters concerning *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020), Blanco represents PennyMac and is an agent of PennyMac.

3. **Brad R. Johnson, Ph.D., J.D., CPA (Inactive, OR, #4278).** Johnson is an individual citizen and resident of Myrtle Beach, Horry County, South Carolina, with his legal residence and domicile located at 8669 Laurel Woods Drive in Myrtle Beach, SC 29588, and has been married to Elci Wijayaningsih since January 2000. Professionally, Dr. Johnson is employed by the State of South Carolina as a tenured Professor of Accounting (and Accounting Program Coordinator) at Francis Marion University (FMU) with his principal place of business at 260 Founders Hall in the School of Business, Francis Marion University, Box 100547, Florence, SC 29502, telephone number (843) 661-1427. Specifically, Dr. Johnson (a) has been teaching Federal Taxation at the University Graduate and Undergraduate levels for over 40 years and (b) has been a licensed (active or inactive) Oregon C.P.A. for over 35 years.

## FACTUAL BASIS FOR CLAIM

4. **Johnson's cash purchase of Lots 16 and 18.** As a consequence of Johnson's cash purchase of Lots 16 and 18, on November 7, 2008, AmTrust Bank f/k/a Ohio Savings Bank, as Grantor, conveyed the property more particularly described below to Brad Johnson, as Grantee, by executing and delivering a Limited Warranty Deed, recorded on November 10, 2008, in Book 2856, Page 708 of the Brunswick County Public Registry, North Carolina:

> **Being all of Lots 16 and 18, Block 186, Section N-6, Long Beach**
> **(now Oak Island), NC as shown on map recorded in Map Book 11,**
> **Page 89, Brunswick County Registry.**

*See* Exhibit I - Limited Warranty Deed for Lots 16 & 18, recorded on November 10, 2008, incorporated by reference herein, a true and correct copy.

5. On or before November 7, 2008, having total control over Lots 16 & 18, for the purpose of insuring the home on Lots 16 & 18, Johnson, individually, made the personal, deliberate and unilateral decision to purchase dwelling and flood insurance from the Farm Bureau, which was maintained until 2018. In 2009, Johnson obtained a residential loan from Prime Lending for the purpose of refinancing several outstanding debts, wherein the Deed of Trust identified Lots 16&18 as security for the loan.

6. **Johnson's cash purchase of Lots 13, 15 and 17.** As a result of Johnson's cash purchase of Lots 13, 15 and 17, on or about August 25, 2012, Homer E. Wright, Jr., as Grantor, conveyed the property more particularly described below to Brad Johnson, as Grantee, by executing and delivering a General Warranty Deed, recorded on August 31, 2012, in Book 3307, Page 799 of the Brunswick County Public Registry, North Carolina:

> **BEING ALL OF LOTS 13, 15 AND 17, BLOCK 186, SECTION N-6,**
> **LONG BEACH (now Oak Island) as per map for National**
> **Development Corp. prepared by Howard M. Loughlin,**
> **Registered Land Surveyor, recorded in Map Book 11, page 89,**
> **office of the Register of Deeds for Brunswick County, North**
> **Carolina.**

*See* Exhibit II - General Warranty Deed for Lots 13, 15 & 17, recorded on August 31,

2012, incorporated by reference herein, a true and correct copy.

7. Having total control over Lots 13, 15 & 17, for the purpose of avoiding the recurring, annual

Sewer District Fee, levied upon owners of undeveloped parcels by the Town of Oak Island,

North Carolina, in two Instruments of Combination, dated October 29, 2012 and June 12,

2013, Johnson, individually, made the personal and unilateral decision to combine Lots 13,

15 & 17 with contiguous Lots 16 & 18 to create one developed parcel (Parcel # 235IM021).

*See* Exhibit III - Instruments of Combination (for Property Tax and Assessment Purposes

Only), Dated October 29, 2012 and June 12, 2013, incorporated by reference herein, a true

and correct copy.

8. On June 9, 2013, Johnson submitted a preprinted Uniform Residential Loan Application to

Weststar Mortgage, Inc. (hereinafter "Weststar") for the purpose of "refinancing" (debt

consolidation). Such preprinted application was prepared by Weststar, based upon the

information contained in Johnson's credit report obtained by Weststar.

9. In the course of the evaluation of Johnson's loan application by the underwriters of Weststar,

**Weststar ordered an appraisal**, whereupon "[t]he purpose of the appraisal [was only] to

provide an opinion of the market value of the property described in the body of [the] report"

(i.e., Lots 13, 15, 16, 17 & 18). *See* Exhibit IV - Appraisal of Lots 13, 15, 16, 17 & 18 Dated

June 12, 2013, incorporated by reference herein, a true and correct copy.

10. In the course of evaluating Johnson's loan application, Weststar's underwriters demanded more information and documents as a prerequisite to the approval/closing of the loan. *See* Exhibit V – E-Mail Communications Between Weststar and Johnson, dated June 28, 2013, incorporated by reference herein, a true and correct copy.

11. On or after July 1, 2013, in a telephone call between Weststar's Loan Originator, Pamela Franz, and Johnson, Johnson asked Weststar's Loan Originator, Pamela Franz, who he should contact if he had questions regarding the closing documents. Weststar's Loan Originator, Pamela Franz, stated that she would answer his questions and that he could question any document, except for the legal description of the property in the Deed of Trust, which was referenced in the Note. Weststar's Loan Originator, Pamela Franz, stated emphatically that the legal description of the property described in the Deed of Trust could not be changed under any circumstances.

12. As a result of the careful, thorough and detailed evaluation and quality reviews of Johnson's loan application, conducted by Weststar's underwriters and senior loan officers between July 15-17, 2013, loan approval and permission to close was granted by said persons. *See* Exhibit VI – Various E-Mail Communications Between Weststar's Loan Originator, Pamela Franz, and Johnson, incorporated by reference herein, a true and correct copy.

13. Weststar's Loan Originator, Pamela Franz, told Johnson that closing documents would be electronically transmitted to Johnson. Furthermore, Weststar's Loan Originator, Pamela Franz, gave Johnson instructions for signing said closing documents, where an exact timeline for signing said closing documents had to be followed to successfully close the loan. *See* Exhibit VI – Various E-Mail Communications Between Weststar's Loan Originator, Pamela Franz, and Johnson.

14. When Johnson and his wife, Elci Wijayaningsih, received the closing documents, a Deed of

Trust was included in these documents. Prior to receiving the Deed of Trust, there had been

no discussion or agreement among or between the parties (Johnson, Wijayaningsih or

Weststar) as to the identity of the Property that was to be granted by Johnson and

Wijayaningsih to secure the loan. *See* Exhibit VII – Deed of Trust Dated July 19, 2013, and

Recorded July 24, 2013, incorporated by reference herein, a true and correct copy. On

pages 2-3, it states:

> "TRANSFER OF RIGHTS IN THE PROPERTY
> The beneficiary in this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successor and assigns of MERS. **This Security Instrument secures to Lender:** (i) the repayment of the loan, and all renewals, extensions and modifications of the Note; and (ii) **the performance of Borrower's covenants and agreements under this Security Instrument and the Note.** For this purpose, **Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, with power of sale, the following described property located** .
> . .
> SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'.
> **Which currently has the address of 111 SouthEast 14th Street, Oak Island, North Carolina 28465**
>     TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all of the improvements now or hereafter erected on the property and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." **Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument,** but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument." Bold added.

15. In particular, Exhibit "A" of the Deed of Trust identified in Paragraph 14 describes the

Property to secure the loan as:

> **"The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:**
>
> **Being all of Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.**
>
> **Parcel ID: 235-IM-036, 2351M037**
>
> **This being the same property conveyed to Brad Johnson from Homer E. Wright, Jr., unmarried in a Deed dated August 2, 2012, recorded August 31, 2012, in Book 3329 Page 0354.**
>
> **Property Commonly Known As: 111 SouthEast 14th Street Oak Island, NC 28465"**

16. When Johnson received the closing documents, a Note was included in those closing

documents. *See* Exhibit VIII – Note Dated July 19, 2013, and Recorded July 24, 2013,

incorporated by reference herein, a true and correct copy. On page 2, it states:

> "UNIFORM SECURED NOTE
> This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as the Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."

17. When Johnson received the closing documents, Johnson had a number of questions. These

questions were E-mailed to Weststar's Loan Originator, Pamela Franz, who promptly

responded to the questions of Johnson. *See* Exhibit VI – Various E-Mail Communications

Between Weststar's Loan Originator, Pamela Franz, and Johnson.

18. When Johnson received the closing documents, Johnson and Wijayaningsih reviewed each

document, in detail, and recognized that the Deed of Trust, referenced above in Paragraphs

14 & 15, was a Security Instrument that had as its purpose to secure to Weststar (a) the

repayment of the loan, and all renewals, extensions and modifications of the Note, referenced

above in Paragraph 16, and (b) the performance of Johnson's and Wijayaningsih's covenants

and agreements under said Security Instrument. Furthermore, neither Johnson nor

Wijayaningsih questioned the legal description of the property in the Deed of Trust(i.e.,

Schedule A), because, Weststar expressly intended that, *for the purpose referenced above*,

Johnson and Wijayaningsih irrevocably grant and convey to the named Trustee and the

named Trustee's successors and assigns, with power of sale, the following property (and no

other):

> **"The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:**
>
> **Being all of Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.**
>
> **Parcel ID: 235-IM-036, 2351M037**
>
> **This being the same property conveyed to Brad Johnson from Homer E. Wright, Jr., unmarried in a Deed dated August 2, 2012, recorded August 31, 2012, in Book 3329 Page 0354.**
>
> **Property Commonly Known As: 111 SouthEast 14th Street Oak Island, NC 28465**
>
> **which currently has the address of 111 SouthEast 14th Street Oak Island, NC 28465"**

*See* Exhibit VII – Deed of Trust Dated July 19, 2013, and Recorded July 24, 2013.

19. Moreover, after a detailed discussion the day before, at closing, on July 19, 2013, to serve the purpose of the Security Instrument, as referenced in Paragraph 18, Johnson and Wijayaningsih expressly intended to irrevocably grant and convey to the named Trustee and the named Trustee's successors and assigns, with power of sale, the following property (and no other):

> **"The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:**
>
> **Being all of Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.**
>
> **Parcel ID: 235-IM-036, 2351M037**
>
> **This being the same property conveyed to Brad Johnson from Homer E. Wright, Jr., unmarried in a Deed dated August 2, 2012, recorded August 31, 2012, in Book 3329 Page 0354.**
>
> **Property Commonly Known As: 111 SouthEast 14th Street Oak Island, NC 28465**
> **which currently has the address of 111 SouthEast 14th Street Oak Island, NC 28465"**

*See* Exhibit VII – Deed of Trust Dated July 19, 2013, and Recorded July 24, 2013.

In addition, Johnson, individually, made the personal, deliberate, and unilateral business decision to elect (a) to continue purchasing, from the Farm Bureau, dwelling insurance and flood insurance on his home located on Lots 16 & 18 and (b) for the purpose of having a more even cash outflow, to have Weststar Mortgage, Inc. set up an escrow account so that Johnson would pay property taxes and insurance on a monthly basis for the entire developed parcel, which was allowed by provisions of the Deed of Trust referenced in Paragraphs 14 & 15.

20. After Johnson and Wijayaningsih signed the closing documents, those closing documents were sent to Linear Title & Closing. Linear Title & Closing reviewed those closing documents, found no irregularities, proceeded with closing the transaction, and recorded the Note and Deed of Trust referenced in Paragraphs 14-16.

21. Through two letters dated August 8, 2013, and September 2, 2013, PennyMac notified Johnson that the Note referenced above in Paragraph 16 had been sold to PennyMac on August 6, 2013. *See* Exhibit IX – Letters from PennyMac to Johnson dated August 8, 2013, and September 2, 2013. In PennyMac's Letter dated September 2, 2013, PennyMac states:

> "The purpose of this notice is to inform you that your mortgage loan referenced above was sold to PennyMac Loan Services, LLC ('PennyMac' or 'Creditor') on August 6, 2013. The Creditor also services your loan. Please note, this letter does not require any action to be taken on your part, but is simply a courtesy notification of the assignment, sale, or transfer of your mortgage loan. Below is PennyMac's contact information, should you have any questions or concerns about your loan.
>
> The transfer of mortgage loans is a standard part of the mortgage business for many of the nation's mortgage lenders. **The transfer of your mortgage loan to the Creditor does not affect any terms or conditions of the Mortgage/Deed of Trust or Note. The transfer of ownership of your mortgage loan has not been publicly recorded.**" Bold Added.

Enclosed in the letter dated September 2, 2013, were the Deed of Trust referenced in Paragraphs 14 & 15 and the Note referenced in Paragraph 16. **Johnson relied on the veracity and the substantive contents of the statements made by PennyMac in this letter and based his future conduct on such statements.**

22. **On September 2, 2013, PennyMac had knowledge of the Property, described in Paragraph 15, which was the subject of the Security Instrument (i.e., Deed of Trust), referenced in Paragraph 14, and that neither hazard property insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's beneficial/security interest in said Property (i.e., Lots 13, 15 & 17).**

23. On September 20, 2017, in South Carolina, Johnson received an E-mail from PennyMac. *See*

Exhibit X – E-Mail from PennyMac to Johnson Dated September 20, 2017, incorporated by

reference herein, a true and correct copy.

24. Shortly after receiving the E-mail referenced above in Paragraph 23, Johnson called

PennyMac from South Carolina, for the purpose of having PennyMac discontinue paying for

the Farm Bureau insurance policies, as of April (dwelling insurance) and May (flood

insurance), 2018, because Johnson's daughter was planning to enter college in Fall 2019 and

Johnson wanted to decrease his expenses in preparation. Specifically, from South Carolina,

Johnson spoke with a PennyMac employee/agent in the Escrow/Insurance Area about

discontinuing these insurance policies. This PennyMac employee/agent in the

Escrow/Insurance Area responded that such insurance was required. Johnson responded by

saying that PennyMac only had a security interest in land, so that Johnson did not think that

flood and dwelling insurance policies were required. The PennyMac employee/agent

responded by saying that he would look into it (i.e., whether such insurance policies were

required).

25. In all the alleged phone conversations with PennyMac, each PennyMac employee/agent in

the Escrow/Insurance Area refused to give his/her full name. Accordingly, Johnson simply

alleges that his call was made to a "PennyMac employee/agent in the Escrow/Insurance

Area," when Johnson alleges with whom Johnson spoke and the specific response of said

PennyMac employee/agent.

26. In April 2018, Johnson discovered that PennyMac used Johnson's escrow funds to

electronically pay to renew the Farm Bureau dwelling policy, over Johnson's objections,

even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 &

18 would insure PennyMac's beneficial/security interest in Lots 13, 15 & 17. *See* Paragraph 22. As a result, Johnson was determined to close his escrow account and discontinue the insurance himself.

27. Accordingly, during the months of April – August 2018, Johnson made several telephone calls to PennyMac employees/agents in the Escrow/Insurance Area concerning Johnson's request to close his escrow account. In each of those calls, Johnson stated that the escrow account was elective and Johnson had determined that it was no longer needed. In addition, Johnson told each PennyMac employee/agent in the Escrow/Insurance Area that PennyMac only had a beneficial/security interest in land, so that he did not think that flood and hazard insurance policies were required to insure PennyMac's beneficial/security interest in land.

28. Based upon the conversations referenced in Paragraph 27, on May 25, 2018, by Letter (transmitted by the U.S. Mails) dated May 25, 2018, PennyMac denied Johnson's request to close his escrow account. *See* Exhibit XI – Determination Letters by PennyMac to Johnson (Dated May 25, 2018, August 31, 2018, and September 17, 2018) Regarding the Closing of Dr. Johnson's Escrow Account, incorporated by reference herein, a true and correct copy. However, on August 31, 2018 and September 17, 2018, by Letters (transmitted by the U.S. Mails) dated August 31, 2018 and September 17, 2018 to Johnson, PennyMac approved Johnson's request to close his escrow account, while, at the same time, in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, PennyMac threatened Johnson with economic harm. Specifically, PennyMac stated that Johnson, individually, must pay for property insurance on Lots 16 & 18, or else, suffer economic harm, even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's

beneficial/security interest in Lots 13, 15 & 17. *See* Paragraph 22. Also, *see* Exhibit XI –

Determination Letters by PennyMac to Dr. Johnson (Dated May 25, 2018, August 31, 2018,

and September 17, 2018) Regarding the Closing of Dr. Johnson's Escrow Account.

29. With regard to one of those telephone calls referenced in Paragraph 27, Johnson called a

PennyMac employee/agent in the Escrow/Insurance Area on June 4, 2018 and told said

employee/agent that PennyMac only had a security interest in vacant land, so that he did not

think that flood and hazard insurance policies were required. In response, said PennyMac

employee/agent in the Escrow/Insurance Area called Dr. Johnson in South Carolina on June

14, 2018, regarding a letter to be sent, via the U.S. Mails, by PennyMac to Johnson on June

15, 2018. *See* Exhibit XII – Letter Dated June 15, 2018, by PennyMac to Dr. Johnson

Regarding the Trust Deed and Note, incorporated by reference herein, a true and correct

copy. This letter enclosed the Deed of Trust, referenced in Paragraphs 14 & 15, and Note,

referenced in Paragraph 16, but the PennyMac employee/agent in the Escrow/Insurance Area

intentionally omitted Schedule "A" of the Deed of Trust in an attempt to defraud Johnson

concerning the exact description of the Property for which PennyMac had a

beneficial/securityinterest.

30. **PennyMac's Unilateral Offer**. After September 17, 2018, Johnson had several telephone

conversations with PennyMac employees/agents in the Escrow/Insurance Area concerning

Johnson's plan to not renew the Farm Bureau insurance policies, as of April (dwelling

insurance) and May (flood insurance), 2019, because Johnson's daughter was planning to

enter college in Fall 2019 and Johnson wanted to decrease his expenses in preparation.

Specifically, in each of those telephone calls made from South Carolina, Johnson inquired as

to what kind of insurance on vacant land would satisfy the performance of Johnson's

covenants and agreements under the Security Instrument, referenced in Paragraphs 14 & 15,

and the Note, referenced in Paragraph 16. PennyMac employees/agents in the

Escrow/Insurance Area consistently responded by initially stating that insurance on the

home, located on Lots 16 & 18, was required to insure the vacant land on Lots 13, 15 & 17.

However, subsequently, in a second telephone conversation with a female PennyMac

employee/agent in the Escrow/Insurance Area, said PennyMac employee/agent stated that if

Johnson separated Lots 13, 15 & 17 from Lots 16 & 18, PennyMac would not require hazard

insurance on the home, located on Lots 16 & 18, to insure PennyMac's beneficial/security

interest in Lots 13, 15 & 17 (vacant land). However, said PennyMac employee/agent in the

Escrow/Insurance Area stated that flood insurance would still be required, unless FEMA

changed its flood zone designation.

31. **Johnson's Acceptance of PennyMac's Unilateral Offer**. Based upon the unilateral offer

made by the PennyMac employee/agent in the Escrow/Insurance Area, referenced in

Paragraph 30, and in reliance thereof, on March 22, 2019, Johnson accepted PennyMac's

unilateral offer, thereby forming a unilateral contract with PennyMac, by preparing and

recording an Instrument of Separation, which separated Lots 13, 15, 16, 17 & 18 into two

parcels – one developed parcel (Parcel # 235IM021, incorporating Lots 16 & 18) and one

undeveloped parcel (Parcel # 235IM104, incorporating Lots 13, 15 & 17). *See* Exhibit XIII –

Instrument of Separation Recorded on March 25, 2019, incorporated by reference herein, a

true and correct copy. Brunswick County assigned undeveloped Parcel # 235IM2104 (Lots

13, 15, & 17) with a fair market value of $155,250 and developed Parcel # 235IM21 (Lots 16

& 18) with a fair market value of $386,000. *See* Exhibit XIV – Notices of Real Estate

Assessed Value, Brunswick County, North Carolina - The Result of the Instrument of

Separation Recorded on March 25, 2019, incorporated by reference herein, a true and correct copy. Furthermore, such separation of a developed parcel caused the creation of one undeveloped tax parcel (Parcel # 235IM2104) upon which the Town of Oak Island assessed an additional Sewer District Fee of over $600 per year.

32. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, PennyMac began sending threatening letters dated May 10, 2019 and June 14, 2019, via the U.S. Mails, demanding that Johnson buy hazard insurance on his home on Lots 16 & 18, or else, suffer economic harm, even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure the Property for which PennyMac has a security/beneficial interest (i.e., Lots 13, 15 & 17). *See* Paragraph 22. Specifically, each of such letters threatened Johnson with economic harm unless Johnson purchased hazard insurance on his home on Lots 16 & 18, which Johnson was under no obligation to do, as follows.

"REGARDING YOUR LOAN
Our records show that your Homeowners (Hazard) Insurance expired, and we do not have
evidence that you have obtained new coverage.
WHY YOU RECEIVED THIS NOTICE
**Because Homeowners (Hazard) Insurance is required on your property, we plan to
buy insurance for your property. You must pay us for any period during which the
insurance we buy is in effect, but you do not have insurance.**
WHAT YOU SHOULD DO
You should immediately provide us with your insurance information. We require you to
maintain Hazard insurance on your property at all times. Please provide a copy of your
Insurance Policy Declarations Page, Evidence of Insurance, Binder, or other written
confirmation from your insurance agent or carrier. This information must be in writing."
Bold added. *See* Exhibit XV - Letters Dated May 10, 2019 and June 14, 2019 from
PennyMac to Dr. Johnson, Demanding, Under Threat of Economic Harm, that Dr.
Johnson Buy Property Hazard Insurance, incorporated by reference herein, a true and
correct copy.

33. In May 2019, Johnson met twice with Claire, a Farm Bureau Insurance agent. Initially,

about May 13, 2019, Johnson met with Claire to explain Johnson's dispute with PennyMac.

Johnson explained to Claire that he wanted to discontinue paying for the Farm Bureau

flood and property insurance policies, as of April (dwelling insurance) and May (flood

insurance), 2019, because Johnson's daughter was planning to enter college in Fall 2019

and Johnson wanted to decrease his expenses in preparation. Furthermore, Johnson

explained that PennyMac only had a security/beneficial interest in land, so that he did not

think that flood and hazard insurance policies were required to satisfy the performance of

Johnson's covenants and agreements under the Security Instrument, referenced in

Paragraphs 14 & 15, and the Note, referenced in Paragraph 16. Moreover, Johnson stated

that a female PennyMac employee/agent in the Escrow/Insurance Area had told Johnson

that if he separated Lots 13, 15 & 17 from Lots 16 & 18, PennyMac would not require

hazard insurance on the home, located on Lots 16 & 18, to insure PennyMac's

security/beneficial interest in Lots 13, 15 & 17 (vacant land), but that that flood insurance

would still be required, unless FEMA changed its flood zone designation. *See* Paragraph

30. Johnson then told Claire that he had separated Lots 13, 15 & 17 from Lots 16 & 18 in

an Instrument of Separation recorded on March 25, 2019, and referenced in Paragraph 31.

Specifically, Johnson asked Claire what kind of insurance on vacant land would satisfy the

performance of Johnson's covenants and agreements under the Security Instrument,

referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16. Claire stated

that she did not know of any insurance that would insure PennyMac's security/beneficial

interest in vacant land, i.e., Lots 13, 15 & 17, but that Claire would attempt to contact the

female PennyMac employee/agent in the Escrow/Insurance Area with whom Johnson

spoke.

34. On May 21, 2019, Johnson again met with Claire, a Farm Bureau Insurance agent. Claire

stated that she had spoken with a female PennyMac employee/agent in the Escrow/Insurance

Area, but that said PennyMac employee/agent was unyielding in requiring hazard and flood

insurance on the home, located on Lots 16 & 18, to insure the vacant land on Lots 13, 15 &

17, even though PennyMac knew that neither hazard insurance nor flood insurance on Lots

16 & 18 would insure the Property for which PennyMac has a security/beneficial interest

(i.e., Lots 13, 15 & 17). *See* Paragraph 22.  Claire stated that she told said PennyMac

employee/agent that Claire (the Farm Bureau) could not write an insurance policy that would

insure PennyMac's security/beneficial interest in vacant land (i.e., Lots 13, 15 & 17).  After

discussion with Claire and to partly satisfy the performance of Johnson's covenants and

agreements under the Security Instrument, referenced in Paragraphs 14 & 15, and the Note,

referenced in Paragraph 16, as interpreted by PennyMac, Johnson purchased a Personal

Injury Coverage (PIC) policy and renewed his flood insurance on the home, located on Lots

16 & 18, to insure PennyMac's security/beneficial interest in the vacant land (i.e., Lots 13, 15 & 17).

35. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** Within the lender force-placed insurance (FPI) business operated by Assurant, SGIC and PennyMac, shortly before May 10, 2019, PennyMac electronically notified Assurant that hazard and flood insurance with respect to the improvements on Lots 16 & 18 were required, because PennyMac had a security/beneficial interest in Lots 13, 15 & 17 (vacant land), even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's beneficial/security interest in Lots 13, 15 & 17 (vacant land). *See* Paragraph 22. Also, shortly before July 16, 2019, Assurant (a) electronically notified PennyMac that hazard and flood insurance on Lots 16 & 18 had lapsed and (b) through its contract with PennyMac for tracking insurance, electronically communicated with SGIC, causing SGIC to electronically issue lender FPI to PennyMac, insuring the improvements on Lots 16 & 18, even though PennyMac had no insurable or beneficial/security interest in Lots 16&18 and even though SGIG, Assurant and PennyMac each knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in Lots 13, 15 & 17 (vacant land). The issuance of such lender FPI on Lots 16 & 18 to PennyMac (lacking an insurable or beneficial/security interest in Lots 16 & 18) resulted in revenue recognized by SGIG and PennyMac, where PennyMac (a) charged Johnson with the "cost" (determined by Assurant) of the lender FPI on Lots 16 & 18 issued by SGIC, and then (b) attempted to collect the debt owed to SGIC from Johnson. In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security

Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, on

July 16, 2019, PennyMac sent Johnson, via the U.S. Mails, a Certificate of Coverage

Placement (i.e., lender FPI) between PennyMac and SGIC with respect to the improvements

on Lots 16&18. Such Certificate states as follows.

"Re: Policy Number: MLR07769715085

Hazard Insurance Annual Premium amount under PENNYMAC LOAN SERVICES, LLC's Policy: **$2,880.00**

Hazard Insurance Coverage Amount under PENNYMAC LOAN SERVICES, LLC's Policy: **$369,500**
(This insurance may provide less coverage than was in effect previously.)

In case of loss, report it by calling 1-800-652-1262.

**REGARDING YOUR LOAN**

Our records indicate we have not been provided proof of acceptable homeowner's insurance on the above-referenced property in response to our prior notifications to you. **As you know, your loan agreement requires that you provide us with proof of acceptable and continuous homeowner's insurance on an annual basis.** As we have not received proof of acceptable homeowner's insurance coverage, which was requested in our prior notifications to you, **we have purchased a Lender-Placed Insurance to protect our interest in the dwelling structure, by advancing funds from your escrow account.**

**The Lender-Placed Insurance purchased includes coverage in the amount of $369,500 with an annual premium of $2,880.00.**

**WHAT THIS MEANS**

Enclosed you will find a copy of the Certificate of Insurance that has been purchased by PENNYMAC LOAN SERVICES, LLC. **For insurance coverage that we obtain for your Property (Lender-Placed Insurance), you will be responsible for reimbursing PENNYMAC LOAN SERVICES, LLC for the premium associated with such coverage.** The annual premium for this insurance will be paid from your escrow account. **If you did not have an escrow account, PENNYMAC LOAN SERVICES, LLC has established one for you and will provide you with an escrow analysis statement, which will explain the increase in your monthly payment to recover the amount advanced as well as future insurance payments.**

Please allow us to recap the important facts about Lender-Placed Insurance:

- This insurance may be more expensive and will likely provide less coverage than was previously in effect.

- **This insurance protects the dwelling structure at your expense.**

- **The Lender-Placed Insurance premium has been advanced from your escrow account. If you did not have an escrow account, PENNYMAC LOAN SERVICES, LLC has established one for you and will provide you with an escrow analysis statement, which will explain the increase in your monthly payment to recover the amount advanced as well as future insurance payments. You will be responsible for any applicable taxes or fees, which result from the purchase of this insurance.**" Bold added. *See* Exhibit XVI – Certificate of Coverage Placement Dated July 16, 2019: A Lender-Placed Hazard Insurance Policy Between PennyMac and SG Insurance to Force Hazard Insurance Coverage on Dr. Johnson's Home on Lots 16 & 18, incorporated by reference herein, a true and correct copy.

36. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** Also, in contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, on July 16, 2019, beginning with PennyMac's Mortgage Activity Statement, dated July 16, 2019, and with PennyMac's Escrow Account Disclosure Statement, dated August 12, 2019, and continuing with PennyMac's Mortgage Activity Statements dated August 19, 2019 and September 17, 2019, where each of said statements was sent by PennyMac to Johnson via the U.S. Mails, PennyMac (a) charged Johnson $2880 for the lender FPI between PennyMac and SGIC, referenced in Paragraph 35, that force-placed hazard insurance coverage on Johnson's home on Lots 16 & 18 without Johnson's permission, and (b) increased Johnson's monthly payment from $1506.82 to $2106.81, even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in Lots 13, 15 & 17 (vacant land). *See* Exhibit XVII - PennyMac's Mortgage Activity Statements Dated July 16, 2019, August 19, 2019 and September 17, 2019 and PennyMac's Escrow Account Disclosure Statement, Dated August 12, 2019, incorporated by reference herein, a true and correct copy.

37. On or about August 20, 2019, Johnson separately complained to (a) the North Carolina

Commissioner of Banks and (b) the North Carolina Department of Insurance regarding the

alleged unlawful activities described above of (1) PennyMac (in contravention of the terms

and conditions of the unilateral contract that Johnson made with PennyMac, as described

above in Paragraphs 30 & 31, and in contravention of the terms and conditions of the

Security Instrument, referenced above in Paragraphs 14 & 15, and the Note, referenced above

in Paragraph 16) and (2) SGIC, respectively. In each of his Complaints, Johnson declared as

follows.

> "PennyMac has contracted with Standard Guaranty Insurance Company (Standard) for
> Standard to write a Residential Dwelling Certificate, i.e., a 'lender placed policy' (Policy
> Number MLR07769715085). However, **PennyMac has no insurable interest in the**
> **real property (dwelling) that is the object of the Residential Dwelling Certificate**.
> To make matters worse, PennyMac has increased the principal balance of the debt that
> [Dr. Johnson] owe[s] by over $2800 – the cost of the lender placed policy.
> The lender placed policy speaks of 'material misrepresentation' [paragraph 16(b)(2)].
> However, [Dr. Johnson has] tried twice to contact Standard to tell Standard about the
> material misrepresentation made by PennyMac. Standard will not talk to [Dr. Johnson]
> about the issue. **Standard says that [Dr. Johnson has] to talk to PennyMac**." Bold
> added. *See* Exhibit XVIII – Dr. Johnson's Complaint to the North Carolina Commission
> of Banks against PennyMac, Dated on or about August 20, 2019, Regarding the Unlawful
> Activities of PennyMac, incorporated by reference herein, a true and correct copy;
> Exhibit XIX – Dr. Johnson's Complaint to the North Carolina Department of Insurance
> against SG Insurance, Dated on or about August 20, 2019, Regarding the Unlawful
> Activities of SG Insurance, incorporated by reference herein, a true and correct copy.

38. On September 5, 2019, Mr. Saldivar, an employee/agent of PennyMac, responded to Johnson

by Letter, transmitted via the U.S. Mails, regarding the Complaint that Johnson filed with the

North Carolina Commission of Banks, which is referenced above in Paragraph 37. Mr.

Saldivar stated that Johnson was "paid through August 2019" (i.e., was not in default) and, as

proof, Mr. Saldivar included (a) a "Customer Account Activity Statement" and (b) the Note,

referenced above in Paragraph 16. *See* Exhibit XX – Letter Dated September 5, 2019, from

PennyMac to Dr. Johnson Regarding the Complaint to the North Carolina Commission of

Banks that Dr. Johnson filed against PennyMac, incorporated by reference herein, a true and correct copy.

39. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, on September 19, 2019, Mr. Saldivar, an employee/agent of PennyMac, responded to the North Carolina Commission of Banks by Letter, transmitted via the U.S. Mails, regarding the Complaint that Johnson had filed with the North Carolina Commission of Banks, which is referenced above in Paragraph 37. Mr. Saldivar states that "a title claim has been filed" with Linear Title & Closing (*which was subsequently denied*) and that **PennyMac "reserves the right to seek reimbursement from Mr. Johnson."** Bold added. *See* Exhibit XXI – Letter Dated September 19, 2019, from PennyMac to the North Carolina Commission of Banks Regarding the Complaint to the North Carolina Commission of Banks that Dr. Johnson filed against PennyMac, incorporated by reference herein, a true and correct copy.

40. On August 30, 2019, and September 26, 2019, Mrs. Sanchez, an employee/agent of SGIC and Assurant, responded to the North Carolina Department of Insurance by Letter, transmitted via the U.S. Mails, regarding the Complaint that Johnson filed with the North Carolina Department of Insurance, which is referenced above in Paragraph 37. In her Letter dated September 26, 2019, Mrs. Sanchez states as follows.

"**[Assurant and SG Insurance] have worked closely with PennyMac,** who is the lender and named insured on our policy **to reach a conclusion for Mr. Johnson.** [Assurant and SG Insurance] understand that **PennyMac is fully aware of Mr. Johnson's complaint** and **working to resolve the issue** with respect to the title, legal descriptions and status of any **improvements on the mortgaged property in question. The lender placed Fire/Allied certificate** (numbered MLR07769715085) that was issued on Mr. Johnson's property, 111 Se 14th Street, Oak Island, NC 28465 with an inception date of May 9, 2019 **remains in effect at this time, at the direction of PennyMac,** until their research is completed and a definitive resolution to Mr. Johnson's concerns is finalized. Should PennyMac's research indicate that the insurance with Standard Guaranty was not necessary it will be adjusted accordingly. **Until such resolution is concluded, the insurance will remain in effect. . .** We continue to strongly believe that **PennyMac is the sole party who can conclusively address any issues pertaining to the servicing of Mr. Johnson's mortgage loan. A final resolution to these matters will be best reached by Mr. Johnson continuing to work directly with PennyMac.** He may contact Mr. Efren Saldivar with PennyMac at 866-695-4122 ext. 2319 for further assistance." Bold added. *See* Exhibit XXII – Letters Dated August 30, 2019 and September 26, 2019, from SG Insurance to the North Carolina Department of Insurance Regarding the Complaint to the North Carolina Department of Insurance that Dr. Johnson filed against SG Insurance, incorporated by reference herein, a true and correct copy.

41. On October 2, 2019, the Office of the North Carolina Commissioner of Banks responded to the Complaint filed by Johnson, which is referenced above in Paragraph 37, wherein by Letter dated October 2, 2019, the North Carolina Commissioner of Banks states to Johnson as follows.

"**If you are not satisfied** with [PennyMac's] reply, please contact the company directly. Also, should you wish to pursue this matter further, **you may want to consider consulting with a private attorney or legal services provider to determine if you have private legal rights or remedies.**" Bold added. *See* Exhibit XXIII – Letter Dated October 2, 2019, from the North Carolina Commissioner of Banks to Dr. Johnson, Regarding the Complaint against PennyMac that Dr. Johnson filed with the North Carolina Commission of Banks, incorporated by reference herein, a true and correct copy.

42. **PennyMac prepares a Fraudulent Assignment of Deed of Trust.** From October 2, 2019,

through February 13, 2020, Johnson placed a multitude of telephone calls to both (a) Mr.

Saldivar of PennyMac at 866-695-4122 ext. 2319 and (b) Mrs. Sanchez of Assurant and

SGIC at 714.338.7720. In each of these calls, Johnson failed to reach the person called

directly, so Johnson left a message. Several of the messages to both (a) Mr. Saldivar of

PennyMac and (b) Mrs. Sanchez of Assurant and SGIC reiterated that PennyMac only has a

security/beneficial interest in vacant land, so that flood and hazard insurance are not required

to satisfy the performance of Johnson's covenants and agreements under the Security

Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16.

Furthermore, Johnson further stated that the lender FPI was invalid and void under its terms

because PennyMac had no insurable interest in the property insured (i.e., Lots 16 & 18). In

all of his messages, Johnson requested a return telephone call at 843.661.1427. Neither Mr.

Saldivar nor Mrs. Sanchez returned any of Johnson's telephone calls. Instead, on October 17,

2019, PennyMac obtained a fraudulent Assignment of Deed of Trust from the Mortgage

Electronic Registration Systems, Inc. (MERS), whereupon, on November 4, 2019, PennyMac

recorded such Assignment in the North Carolina Register of Deeds, Brunswick County. *See*

Exhibit XXIV - Assignment of Deed of Trust, to PennyMac from the Mortgage Electronic

Registration Systems, Inc. (MERS), Dated October 17, 2019, and Recorded on November 4,

2019, incorporated by reference herein, a true and correct copy.

Such Assignment of Deed of Trust falsely identifies the Property Address as "111

SOUTHEAST 14TH STREET, OAK ISLAND, NORTH CAROLINA 28465," whereas the

current address of the Property (Lots 13,15&17) is on SE 13th Street in Oak Island, NC

28465, which is well-known to PennyMac.

43. **PennyMac's (and Blanco's) Foreign Collateral Purposes for filing their Equitable Reformation action and *Notice of Lis Pendens*.** As shown in Paragraphs 21-42, on January 23, 2020, PennyMac, Blanco and Archer (representing Blanco) filed an equitable action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson (and his Wife, Elci Wijayaningsih) for the *Equitable Reformation* of the 2013 Deed of Trust referenced in Paragraphs 14 and 15. Specifically, as shown on Paragraphs 21-42, such action was initiated and executed by PennyMac, Blanco and Archer (representing Blanco) for foreign collateral purposes (i.e., purposes not within the normal scope of reformation actions), including:

(a) unlawfully coercing Johnson to pay a debt for which Johnson was not responsible (i.e., the 2019 lender FPI referenced in Paragraph 35) and then unlawfully seizing Johnson's money from Johnson's South Carolina bank account to pay for the invalid and void debt owed to SGIC (*see* Paragraphs 48-49, below), determined by Assurant and associated with such lender FPI, which was unlawfully obtained by PennyMac from SGIC through Assurant, and

(b) using the existence of the 2020 *Equitable Reformation* action against Johnson (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) -

    (i) to file a *Notice of Lis Pendens* in the County of Brunswick, North Carolina, on January 23, 2020, thereby clouding Johnson's clear title to Lots 16&18, which restricted Johnson's intended gift of said property to his daughter, generally oppressed Johnson, and specifically prohibited Johnson's subsequent encumbrance of said property for the purpose of refinancing Johnson's Note with PennyMac to take advantage of a lower interest rate (e.g., 3%),

(ii) to interfere with Johnson's beneficial interest in (and control over) his real property

(Lots 16&18), thereby gaining an advantage over such property, while, at the same time,

restricting Johnson's ability to make unilateral business decisions with respect to such

property, and

(iii) to compel Johnson to pay off the balance of the PennyMac Note, an act that Johnson

could not be legally and regularly compelled to do (*see* Paragraphs 53-55, below).

*See* Exhibit XXV - The 2020 *Equitable Reformation* action against Johnson (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) filed by PennyMac, Blanco and Archer (representing Blanco) on January 23, 2020 and the *Notice of Lis Pendens* filed by PennyMac, Blanco and Archer (representing Blanco) on January 23, 2020 in the County of Brunswick, North Carolina.

44. **PennyMac's (and Blanco's) Unlawful Tortious Conduct is Intentionally Directed toward Johnson, a South Carolina Legal Resident**. Furthermore, on January 23, 2020, PennyMac, Blanco and Archer (representing Blanco) filed the equitable action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson referenced in Paragraph 43 in the State of North Carolina, Forsyth County District Court, rather than the Brunswick County District Court, for the equitable reformation of the Deed of Trust referenced in Paragraphs 14 and 15, speculating that Johnson, a South Carolina legal resident, would lack the capacity to defend against the false allegations of PennyMac, Blanco and Archer (representing Blanco) in said action. Clearly, the State of North Carolina, Forsyth County District Court, lacks venue (even though such action falsely claims that venue is proper in Forsyth County), since there is not one allegation of fact by any party that implicates Forsyth County. Finally, notwithstanding the foregoing, Johnson is a citizen and

resident of South Carolina. PennyMac, Blanco and Archer (representing Blanco) purposefully and intentionally directed and filed both (a) the 2020 *Equitable Reformation* action against Johnson (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) and (b) the *Notice of Lis Pendens*, referenced in Paragraph 43, a South Carolina legal resident, to cause Johnson harm in South Carolina, which did, in fact, cause Johnson harm in South Carolina.

45. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, Assurant, on behalf of PennyMac, sent another threatening letter to Johnson, dated March 2, 2020, via the U.S. Mails, demanding that Johnson buy hazard insurance on his home on Lots 16 & 18, or else, suffer economic harm. More specifically, such letter threatened Johnson with economic harm unless Johnson purchased hazard insurance on his home on Lots 16 & 18, which Johnson was under no obligation to do, as follows.

> "Your insurance certificate is due to renew on 05/09/2020. If the Named Insured Mortgagee renews the lender placed insurance certificate on your property, it may be renewed with a change in premium. It may also have a change in deductible(s). **This insurance certificate was purchased on your behalf because you did not maintain insurance coverage on your property as required by the terms of your loan**. If you purchase other insurance coverage on your property prior to the renewal date, please mail a copy of the policy to the above Named Insured Mortgagee [Pennymac Loan Services, LLC]." Bold added. *See* Exhibit XXVI - Letter Dated March 2, 2020 from Assurant, on Behalf of PennyMac, to Dr. Johnson, Demanding, Under Threat of Economic Harm, that Dr. Johnson Buy Property Hazard Insurance, incorporated by reference herein, a true and correct copy.

Here, Assurant and SGIC continue to perpetrate the fraud on behalf of PennyMac.

46. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust); Quasi-Contract.** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, PennyMac sent another threatening letter dated March 20, 2020, via the U.S. Mails, demanding that Johnson buy hazard insurance on his home on Lots 16 & 18, or else, suffer economic harm. More specifically, such letter threatened Johnson with economic harm unless Johnson purchased hazard insurance on his home on Lots 16 & 18, which Johnson was under no obligation to do, as follows.

> "REGARDING YOUR LOAN
> Because we did not have evidence that you had Homeowners (Hazard) Insurance on the property listed above, **we bought insurance on your property and added the cost to your mortgage loan account.**
> WHY YOU RECEIVED THIS NOTICE
> . . . **Because Homeowners (Hazard) Insurance is required on your property, we intend to maintain insurance on your property by renewing or replacing the insurance we bought**. . .
> WHAT YOU SHOULD DO
> We require you to maintain Hazard insurance on your property at all times. Please provide a copy of your Insurance Policy Declarations Page, Evidence of Insurance, Binder, or other written confirmation from your insurance agent or carrier. This information must be in writing." Bold added. *See* Exhibit XXVII - Letter Dated March 20, 2020 from PennyMac to Dr. Johnson, Demanding, Under Threat of Economic Harm, that Dr. Johnson Buy Property Hazard Insurance, incorporated by reference herein, a true and correct copy.

47. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** Within the lender force-placed insurance (FPI) business operated by Assurant, SGIC and PennyMac, shortly before May 9, 2020, PennyMac electronically notified Assurant that hazard and flood insurance with respect to the improvements on Lots 16 & 18 were required, because PennyMac had a security/beneficial interest in Lots 13, 15 & 17 (vacant land), even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in Lots 13, 15 & 17 (vacant land). Also, shortly after May 9, 2020, Assurant (a) electronically notified PennyMac that hazard and flood insurance on Lots 16 & 18 had lapsed and (b) through its contract with PennyMac for tracking insurance, electronically communicated with SGIC, causing SGIC to electronically issue lender FPI to PennyMac, insuring the improvements on Lots 16 & 18, even though PennyMac had no security/beneficial (or insurable) interest in Lots 16&18 and even though SGIC, Assurant and PennyMac each knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in Lots 13, 15 & 17. The issuance of such lender FPI resulted in unlawful revenue recognized by SGIC and PennyMac, where PennyMac (a) charged Johnson with the "cost" (determined by Assurant) of the lender FPI, issued by SGIC to PennyMac, and then (b) attempted to collect the unlawful debt allegedly owed to SGIC from Johnson.

48. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the

Note, referenced in Paragraph 16, in PennyMac's Mortgage Activity Statements, dated May 16, 2020, June 16, 2020 and July 16, 2020, and Escrow Account Disclosure Statement dated July 8, 2020, where each of said statements was sent by PennyMac to Johnson via the U.S. Mails, PennyMac (a) charged Johnson $3137 to renew the lender FPI issued by SGIC to PennyMac, which is referenced in Paragraph 35 and insures Johnson's home on Lots 16 & 18, without Johnson's permission, (b) reestablished an escrow account for Johnson and finally (c) charged said escrow account in the amount of $3137. *See* Exhibit XXVIII - PennyMac's Mortgage Activity Statements Dated May 16, 2020, June 16, 2020, and July 16, 2020, and Escrow Account Disclosure Statement Dated July 8, 2020, incorporated by reference herein, a true and correct copy.

49. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust); Quasi-Contract.** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, by using the U.S. wires, PennyMac withdrew $2138.56 (rather than $1506.82) from Johnson's South Carolina bank (First Citizens Bank). In other words, by electronic means, PennyMac took $631.74 out of Johnson's South Carolina bank account without either authority or permission from either the South Carolina bank or Johnson. *See* Exhibit XXIX – Transactions affecting the Bank Account of Brad Johnson during the Period September 11-16, 2020, incorporated by reference herein, a true and correct copy.

50. Within the lender force-placed insurance (FPI) business operated by Assurant, SGIC and PennyMac, shortly before May 2021, PennyMac electronically notified Assurant that hazard and flood insurance with respect to the improvements on Lots 16 & 18 were required, because PennyMac had a security/beneficial interest in Lots 13, 15 & 17 (vacant land), even though PennyMac knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in such Property (i.e., Lots 13, 15 & 17). Also, shortly after May 2021, Assurant (a) electronically notified PennyMac that hazard and flood insurance on Lots 16 & 18 had lapsed and (b) through its contract with PennyMac for tracking insurance, electronically communicated with SGIC, causing SGIC to electronically issue lender FPI to PennyMac, insuring the improvements on Lots 16 & 18, even though PennyMac had no security/beneficial interest (or insurable interest) in Lots 16&18 and even though SGIG, Assurant and PennyMac each knew that neither hazard insurance nor flood insurance on Lots 16 & 18 would insure PennyMac's security/beneficial interest in Lots 13, 15 & 17 (vacant land). The unlawful issuance of such lender FPI resulted in revenue recognized by SGIG and PennyMac, where PennyMac (a) charged Johnson with the "cost" (determined by Assurant) of the lender FPI, and then (b) attempted to collect the unlawful debt allegedly owed to SGIC from Johnson.

51. **Breach of Unilateral Contract Accompanied by Fraud; Breach of Contract (Deed of Trust).** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, PennyMac sent another threatening letter dated February 17, 2022, via the U.S. Mails, demanding that Johnson buy hazard insurance on his home on

Lots 16 & 18, or else, suffer economic harm. More specifically, such letter threatened

Johnson with economic harm unless Johnson purchased **hazard** insurance on his home on

Lots 16 & 18, which Johnson was under no obligation to do, as follows.

"Notice Date: February 17, 2022
Loan Number: 8000689406
Property Address:
111 SE 14TH ST
OAK ISLAND, NC 28465

. . .

**REGARDING YOUR LOAN**
**Our records show that your Homeowners (Hazard) insurance expired, and we do not**
**have evidence that you have obtained new coverage.**

**WHY YOU RECEIVED THIS NOTICE**
**Because Homeowners (Hazard) insurance is required on your property, we plan to**
**buy insurance for your property. You must pay us for any period during which the**
**insurance we buy is in effect, but you do not have insurance.**

**WHAT YOU SHOULD DO**
**You should immediately provide us with your insurance information. We require you to**
**maintain Hazard insurance on your property at all times. . .**

**The insurance we buy:**
- **May be significantly more expensive than insurance you can buy yourself.**
- **May not provide as much coverage as an insurance policy you buy yourself.**

. . .

*This is an attempt by a debt collector to collect a debt and any information obtained will be used*
*for that purpose. However, if your account is subject to pending bankruptcy proceedings or if*
*you have received a discharge in bankruptcy, this statement is for informational purposes only*
*and is not an attempt to collect a debt against you personally.*

About This Notice
Our records indicate that we do not have evidence that you have current Homeowners (Hazard)
Insurance coverage on your property. Your loan agreement requires that you provide us with
proof of acceptable Hazard Insurance on an annual basis. . .

If proof of acceptable coverage is not received, we will purchase the required Hazard Lender-
Placed Insurance coverage at your expense and charge you for the cost of the insurance. The

estimated cost of the Hazard Lender-Placed Insurance will be $2,269.00, if purchased. The coverage period will be effective from 02 / 16 / 2022 until 02/16/2023.

Lender-Placed Insurance
. . .
For Lender-Placed Insurance coverage that we buy for your Property, you will be responsible for reimbursing us for the premium associated with this coverage. The annual premium for this insurance will be paid from your escrow account. If you do not have an escrow account, we will establish one for you and provide you with an escrow analysis statement, which will explain the increase in your monthly payment to recover the amount advanced as well as future insurance payments.

Contact Us
. . .

Please be advised that the lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines." Bold added.

*See* Exhibit XXX - Letter Dated February 17, 2022 from PennyMac to Dr. Johnson, Demanding, Under Threat of Economic Harm, that Dr. Johnson Buy Property **Hazard** Insurance, incorporated by reference herein, a true and correct copy.

52. **Breach of Contract Accompanied by Fraud; Breach of Contract (Deed of Trust); Quasi-Contract.** In contravention of the terms and conditions of the unilateral contract that Johnson made with PennyMac, as described in Paragraphs 30 & 31, and in contravention of the terms and conditions of the Security Instrument, referenced in Paragraphs 14 & 15, and the Note, referenced in Paragraph 16, PennyMac sent another threatening letter dated February 17, 2022, via the U.S. Mails, demanding that Johnson buy **flood** insurance on his home on Lots 16 & 18, or else, suffer economic harm. More specifically, such letter threatened Johnson with economic harm unless Johnson purchased hazard insurance on his home on Lots 16 & 18, which Johnson was under no obligation to do, as follows.

"Notice Date: February 17, 2022
Loan Number: 8000689406
Property Address:
111 SE 14TH ST
OAK ISLAND, NC 28465

**Re: Insurance Coverage for Flood Hazard - Action Required**
**Annual Flood Insurance Premium under PENNYMAC LOAN SERVICES, LLC**
**Lender-Placed Flood Insurance Coverage, if purchased: $3,875.00**
**Flood Insurance Coverage Amount under PENNYMAC LOAN SERVICES, LLC**
**Lender-Placed Flood Insurance Coverage, if purchased: $250,000**
**Coverage Period, if purchased by PENNYMAC LOAN SERVICES, LLC**
**From: 02/16/2022 Effective Date        Until: 02/16/2023 Expiration Date**

**REGARDING YOUR LOAN**
**Our records indicate that you currently have no flood insurance coverage for the above**
**referenced property ('Property'). The required flood coverage amount needed is**
**$250,000.**
. . .

**WHY YOU RECEIVED THIS NOTICE**
**According to our records, your Property is located in Flood Zone AE, according to Map**
**Panel Number K. The determination that your Property is located in a SFHA is made at**
**the time your loan originated and at any time during the term of your loan. Because the**
**Property is in a SFHA, you are required by the terms of your mortgage/deed of trust**
**and/or Federal law to have adequate flood insurance on your Property. . .**
**If verification of acceptable flood insurance coverage is not received, PENNYMAC**
**LOAN SERVICES, LLC will purchase the flood insurance coverage (Lender-Placed**
**Insurance) at your expense and charge you for the cost of the insurance.**
. . .

**FLOOD INSURANCE REQUIREMENTS**
The flood insurance policy you purchase must:
- Be issued by the National Flood Insurance Program (NFIP) or a private insurer properly licensed to do business where the Property is located;
- Provide coverage at least as broad as the coverage offered by the NFIP flood policies;
- The deductible must be reflected on the policy and not be greater than the maximum deductible available from the NFIP, which is currently $10,000 for residential properties or $25,000 if your property is covered by a condominium association policy;
- Have as the named insured on the policy the same mortgagor/trustor as on your mortgage or deed of trust; and
- Include a standard mortgagee clause naming PENNYMAC LOAN SERVICES, LLC and providing for notice of cancellation to us at the following address:

. . .

**LENDER-PLACED INSURANCE INFORMATION**
The amount of flood insurance that should be maintained on your Property at all times during your loan(s) with us is based in part on our knowledge of the total amount of your loan(s) with us and the initial balance of all loans that are senior to our loan(s) (All Loans). To maintain acceptable insurance, we require that you maintain flood insurance coverage equal to the lesser of the unpaid principal balance of all mortgage liens against the property, the last known hazard insurance amount in effect for your property or the maximum amount available under the National Flood Insurance Program, which is currently $250,000 for a residential property and $500,000 for a non-residential property. If the hazard insurance coverage amount is the lesser of the above values, subsequent changes to your hazard insurance coverage may change your flood insurance requirement.

**PURCHASING LENDER-PLACED INSURANCE**
If we purchase Lender-Placed Insurance, the cost of that coverage will be charged to you and may become an additional debt secured by your mortgage or deed of trust. If you have an escrow account, the cost of this insurance will be paid from it. If you do not have an escrow account, PENNYMAC LOAN SERVICES, LLC may establish one and charge the cost of the Lender-Placed Insurance to it. Charging the cost for this insurance to your escrow account will likely cause your monthly payments to increase.

. . .

Please be advised that the lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines.

**We encourage you to act now and obtain flood insurance in the necessary amounts to avoid incurring the cost of our buying Lender-Placed Insurance."** Bold added.

*See* Exhibit XXXI - Letter Dated February 17, 2022 from PennyMac to Dr. Johnson, Demanding, Under Threat of Economic Harm, that Dr. Johnson Buy Property **Flood** Insurance, incorporated by reference herein, a true and correct copy.

**Under the Laws of the State of South Carolina,**
**PennyMac's (and Blanco's) Breach of a Unilateral Contract Formed in South Carolina**
**Between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident**

53. **Formation of the Unilateral Contract Between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, wherein PennyMac (and Blanco) Offered to File a Voluntary Dismissal with Prejudice, regarding PennyMac's (and Blanco's) Equitable Reformation Action against Johnson (and his Wife, Elci Wijayaningsih), if Johnson, a South Carolina Legal Resident, Paid Off the Balance of the PennyMac Note, which**

**Johnson Accepted.** With respect to PennyMac's (and Blanco's) equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson, a South Carolina legal resident (and his Wife, Elci Wijayaningsih), for the *Equitable Reformation* of the 2013 Deed of Trust referenced in Paragraphs 14 and 15:

**(a) PennyMac's (and Blanco's) UNILATERAL OFFER on January 17, 2022.** After Johnson's deposition, through PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, on January 17, 2022, PennyMac (and Blanco) made a **UNILATERAL OFFER** regarding PennyMac's (and Blanco's) equitable reformation action against Johnson (and his Wife, Elci Wijayaningsih): *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020). Specifically, through PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, on January 17, 2022, PennyMac and Blanco offered to file a *Voluntary Dismissal **with** Prejudice* if Johnson, a South Carolina legal resident, paid off the loan balance of the PennyMac Note of about $273,000.

**(b) PennyMac (and Blanco) REPEATED THEIR UNILATERAL OFFER on February 25, 2022.** Again, through PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, on February 25, 2022, PennyMac and Blanco made a **UNILATERAL OFFER** regarding PennyMac's (and Blanco's) equitable reformation action against Johnson (and his Wife, Elci Wijayaningsih): *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020). Specifically, on February 25, 2022, through PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, PennyMac and Blanco offered to file a *Voluntary Dismissal **with** Prejudice* if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000.

More specifically, in an E-mail, from Johnson's attorney, Tayloe, to Johnson, a South Carolina legal resident, Tayloe states:

> "I talked to Chad Archer. **He is willing to file a Voluntary Dismissal with Prejudice of the claims in the Complaint in exchange for pay off of the loan.** He is going to get us the pay-off amount.
>
> Given that we have depositions scheduled next week, a court-ordered mediation, and a trial upcoming, he would like to have a letter from your investment folks saying that funds are available and when they will be available for disbursement. Is that doable?" Bold added.
>
> *See* Exhibit XXXII – E-mails dated February 25, 2022, from Johnson's attorney, Tayloe, to Johnson, a South Carolina legal resident, **DOCUMENTING** (1) PennyMac's (and Blanco's) UNILATERAL OFFER made by Archer, representing both Blanco and PennyMac, whereby PennyMac (and Blanco) offered to file a *Voluntary Dismissal with Prejudice* if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, and (2) Johnson's initial steps toward accepting PennyMac's (and Blanco's) UNILATERAL OFFER by paying off the loan balance of the PennyMac Note of about $273,000, incorporated by reference herein, a true and correct copy.

**(c) On February 25, 2022, Johnson, a South Carolina resident, began the process of accepting PennyMac's (and Blanco's) UNILATERAL OFFER by paying off the loan balance of the PennyMac Note of about $273,000**. On February 25, 2022, Johnson, a South Carolina resident, agreed to begin the process of accepting PennyMac's (and Blanco's) UNILATERAL OFFER by paying off the loan balance of the PennyMac Note of about $273,000. Specifically, in E-mails dated February 25, 2022, from Johnson, a South Carolina legal resident, to Johnson's attorney, Tayloe, Johnson states:

"Yes."

"I am on the phone with PennyMac.
Wiring Instructions to payoff PennyMac Note:
Payoff Amount: $273,826.25 by 12:00 Noon on March 4, 2022, PST
Full Legal Name
Date of Birth
Property Address
Loan #

Bank of America
PennyMac Loan Services, LLC
Payment Clearing
Routing #: *********
Account #: **********

I will send you the transfer of funds information shortly."

"Please see attached transfer of funds made 2/25/22."

*See* Exhibit XXXII – E-mails dated February 25, 2022, from Johnson's attorney, Tayloe, to Johnson, a South Carolina legal resident, **DOCUMENTING** (1) PennyMac's (and Blanco's) UNILATERAL OFFER made by Archer, representing both Blanco and PennyMac, whereby PennyMac (and Blanco) offered to file a *Voluntary Dismissal **with** Prejudice* if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, and (2) Johnson's initial steps toward accepting PennyMac's (and Blanco's) UNILATERAL OFFER by paying off the loan balance of the PennyMac Note of about $273,000.

**(d) In a series of E-mails on February 25, 2022, Johnson's attorney, Tayloe, and PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, CONFIRM (1) PennyMac's (and Blanco's) UNILATERAL OFFER made by Archer, representing both Blanco and PennyMac, whereby PennyMac (and Blanco) offered to file a *Voluntary Dismissal with Prejudice* if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, and (2)**

Johnson's initial steps towards accepting PennyMac's (and Blanco's)

UNILATERAL OFFER by paying off the balance of the PennyMac Note of about

$273,000. Specifically, Johnson's attorney, Tayloe, states:

> "Chad, in follow up to our conversation this morning, Dr. Johnson has agreed to
> pay off the PennyMac loan. **In turn, you have agreed, upon pay off, to execute
> and file a Voluntary Dismissal, with prejudice,** of all claims in the Complaint,
> with each party paying its/his own costs and attorneys' fees, and, of course, to
> record, or have PennyMac record, a Satisfaction of the Deed of Trust.
>
> As you can see below, **Dr. Johnson has obtained the pay-off amount from
> PennyMac. He also forwarded to me a transaction ledger from his
> investment account showing that funds are being transferred into his bank
> account today. A snippet I prepared from that ledger is attached. Those
> funds should be available on Monday for disbursement.**" Bold added.
> *See* Exhibit XXXIII – E-mails dated February 25, 2022, between Johnson's
> attorney, Tayloe, and PennyMac's attorney/agent, Archer, representing both
> Blanco and PennyMac, **CONFIRMING** (1) PennyMac's (and Blanco's)
> UNILATERAL OFFER made by Archer, representing both Blanco and
> PennyMac, whereby PennyMac (and Blanco) offered to file a *Voluntary
> Dismissal with Prejudice* if Johnson, a South Carolina legal resident, paid off the
> loan balance of the PennyMac Note of about $273,000, and (2) Johnson's initial
> steps towards accepting PennyMac's (and Blanco's) UNILATERAL OFFER by
> paying off the loan balance of the PennyMac Note of about $273,000.

Furthermore, PennyMac's attorney/agent, Archer, representing both Blanco and

PennyMac, states

"Perhaps the payoff will be complete before Tuesday. . . But what I would

propose, **if Dr. Johnson will agree, is just memorializing our deal** in a very

short settlement agreement.  **If Dr. Johnson will sign that agreement**, then I

would also be fine cancelling the Tuesday deposition, just in case, for some

unknown reason, the payoff is slightly slower than is currently anticipated.  I will

work on a short agreement and circulate it to you and Luke later this afternoon or

over the weekend." *Id*. Bold added.

**(e) Neither PennyMac nor Blanco withdrew their UNILATERAL OFFER before**

**March 2, 2022**. Before Wednesday, March 2, 2022, neither PennyMac nor Blanco

attempted to withdraw their **UNILATERAL OFFER** described in subparagraph (b),

above.

**(f) On Wednesday, March 2, 2022, in South Carolina, Johnson ACCEPTS the**

**UNILATERAL OFFER of PennyMac (and Blanco), thereby forming a**

**UNILATERAL CONTRACT with PennyMac (and Blanco) by Paying off the**

**PennyMac Note**. One week before trial, to date, (i) Johnson had paid about $47,000 in

attorneys' fees to protect his unencumbered title to Lots 16&18 and (ii) PennyMac's

attorney, Archer (representing both Blanco and PennyMac), wanted to depose three more

witnesses at a cost of about $50,000 and then there was the trial with a cost of about

$100,000, so Johnson ACCEPTED the UNILATERAL OFFER of PennyMac (and

Blanco) to file a *Voluntary Dismissal **with** Prejudice* by paying off the PennyMac Note at

a cost of $273,826.25. *See* Exhibit XXXIV – Wire Instruction Sheet dated March 2, 2022

and E-mail dated Wednesday, March 2, 2022, from Johnson to Johnson's attorney,

Tayloe, confirming that Johnson has ACCEPTED the UNILATERAL OFFER of PennyMac (and Blanco), thereby forming a UNILATERAL CONTRACT with PennyMac (and Blanco) by Paying off the PennyMac Note, incorporated by reference herein, a true and correct copy.

(g) In paying off the PennyMac Note, as described in Subparagraph (f), above, Johnson relied on the promise of PennyMac (and Blanco) to file a *Voluntary Dismissal with Prejudice,* as described in Subparagraph (b), above.

54. **Under the Laws of the State of South Carolina, PennyMac's (and Blanco's) Intentional and Material Breach of the UNILATERAL CONTRACT Formed between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, on March 2, 2022.** On March 10, 2022, in breach of the UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, as described in Paragraph 53, through PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, PennyMac and Blanco filed a Voluntary Dismissal *without Prejudice,* rather than *Voluntary Dismissal with Prejudice. See* Exhibit XXXV – PennyMac's (and Blanco's) Voluntary Dismissal *without Prejudice,* filed March 10, 2022, incorporated by reference herein, a true and correct copy.

55. **In breaching the UNILATERAL CONTRACT Formed between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, the False Claims of PennyMac (and Blanco).** In filing the Voluntary Dismissal *without Prejudice* on March 10, 2022, as described in Paragraph 54, PennyMac (and Blanco) falsely claimed that:

(a) PennyMac (and Blanco) had no knowledge of (1) PennyMac's (and Blanco's) UNILATERAL OFFER to file a *Voluntary Dismissal with Prejudice,* if Johnson, a South

Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, as described in Subparagraphs (a) & (b) of Paragraph 53, and (2) Johnson's acceptance of said offer and consequential formation of a UNILATERAL CONTRACT with PennyMac (and Blanco), as described in Subparagraph (f) of Paragraph 53, and, notwithstanding the foregoing,

(b) neither PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, nor Blanco had the authority to obligate PennyMac to file a *Voluntary Dismissal **with Prejudice***, instead of a *Voluntary Dismissal **without Prejudice**.*

56. Instead of the false claims of PennyMac (and Blanco) identified in Paragraph 55, at all relevant times regarding (a) the formation of the UNILATERAL CONTRACT between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, as described in Paragraph 53, and (b) the breach of said unilateral contract, as described in Paragraph 54, PennyMac (and Blanco) had knowledge of (1) PennyMac's (and Blanco's) UNILATERAL OFFER to file a *Voluntary Dismissal **with Prejudice***, if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, as described in Subparagraphs (a) & (b) of Paragraph 53, and (2) Johnson's acceptance of said offer and consequential formation of the UNILATERAL CONTRACT with PennyMac (and Blanco), as described in Subparagraph (f) of Paragraph 53, where PennyMac (and Blanco) each knew that Blanco and PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, had the authority to obligate PennyMac to file a *Voluntary Dismissal **with Prejudice***.

57. **Damages Directly Resulting from PennyMac's (and Blanco's) Breach of the UNILATERAL CONTRACT Formed between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident.** Because the legal effect of the filing of a *Voluntary Dismissal **without** Prejudice* in *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020) is to cause such action to become null and void, enabling PennyMac to sue Johnson again, damages directly resulting from PennyMac's (and Blanco's) Breach of the UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South Carolina Legal Resident, as described in Paragraph 53, included Johnson' attorneys' fees of over $47,000 and other costs of defending against PennyMac's (and Blanco's) equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson (and his Wife, Elci Wijayaningsih).

## COUNT I
## BREACH OF UNILATERAL CONTRACT
## ACCOMPANIED BY FRAUDULENT ACTS

58. Count I of this Complaint is a contract claim against PennyMac and Blanco under the laws of the state of South Carolina for *Breach of Unilateral Contract Accompanied by Fraudulent Acts*.

59. **Jurisdiction and Venue.** Diversity Jurisdiction of this Court is proper under 28 U.S.C. § 1332, where this action is of a civil nature involving, exclusive of interest and costs, an amount in controversy in excess of $75,000. Venue in this Court is proper because (a) the UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South Carolina legal resident, as described in Paragraph 53, was formed in South Carolina and (b) injury to Johnson, as described in Paragraph 57, which was directly and proximately caused by PennyMac's (and Blanco's) breach of said unilateral contract, as described in Paragraph 54, occurred in the state of South Carolina.

60. Johnson repeats and re-alleges each of the allegations contained in paragraphs 2 through 57 as if fully set forth herein.

61. **Respondeat Superior – Defendant PennyMac (Blanco).** Since:

   (a) Defendant PennyMac (Blanco), acts only through its Agents (e.g., Archer);

   (b) Each act of an Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein described, was:

   (1) Related to and committed within the course and scope of employment,

   (2) Committed in furtherance of the interests and economic benefits of Defendant PennyMac (Blanco), and

(3) Authorized or subsequently acquiesced to by Defendant PennyMac (Blanco);

(c) Defendant PennyMac (Blanco) derived some benefit from each act committed by an

Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein described; and

(d) under the doctrines of respondeat superior and vicarious liability, the acts of each Agent

(e.g., Archer) of Defendant PennyMac (Blanco), as herein described:

(1) are deemed to be the acts of Defendant PennyMac (Blanco),

(2) are chargeable to Defendant PennyMac (Blanco), and

(3) are binding upon Defendant PennyMac (Blanco),

where Defendant PennyMac (Blanco), is vicariously responsible for the wrongful acts of its

agents (e.g., Archer) and imposing vicarious liability upon Defendant PennyMac (Blanco) is

not inconsistent with the intent of laws of the state of South Carolina.

### The Formation of the UNILATERAL CONTRACT
### Between PennyMac (and Blanco) and Johnson

62. **UNILATERAL OFFER**. As alleged in subparagraphs (a) & (b) of Paragraph 53, on January

17, 2022 and February 25, 2022, through PennyMac's attorney/agent, Archer, representing

both Blanco and PennyMac, PennyMac and Blanco made UNILATERAL OFFERS

regarding PennyMac's (and Blanco's) equitable reformation action against Johnson (and his

Wife, Elci Wijayaningsih): *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth

County, NC 2020). Specifically, on January 17, 2022 and February 25, 2022, through

PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, PennyMac and

Blanco offered to file a *Voluntary Dismissal with Prejudice* if Johnson, a South Carolina

legal resident, paid off the balance of the PennyMac Note of about $273,000.

63. As alleged in Paragraph 56, (a) Blanco and PennyMac each had knowledge of the UNILATERAL OFFERS made by Archer, representing both Blanco and PennyMac, which are referenced in Paragraph 62, and (b) when such offers were made, Archer, representing both Blanco and PennyMac, had the authority to obligate PennyMac to file a *Voluntary Dismissal **with** Prejudice*.

64. As alleged in subparagraph (e) of Paragraph 53, the UNILATERAL OFFERS made by PennyMac and Blanco, which are referenced in Paragraph 62, were never rescinded.

65. **ACCEPTANCE of the UNILATERAL OFFER (FORMATION of the UNILATERAL CONTRACT).** As alleged in subparagraph (f) of Paragraph 53, on March 2, 2022, Johnson paid off the balance ($273,826.25) of the PennyMac Note, using Johnson's funds in his South Carolina bank account, thereby (a) accepting the UNILATERAL OFFER made by PennyMac and Blanco, referenced in Paragraph 62, and contemporaneously, (b) forming a UNILATERAL CONTRACT between PennyMac (and Blanco) and Johnson, where, as alleged in Paragraphs 56 & 63, (1) Blanco and PennyMac each had knowledge of the UNILATERAL OFFERS, referenced in Paragraph 62, and Johnson's payment of the balance ($273,826.25) of the PennyMac Note and (2) Archer, representing both Blanco and PennyMac, had the authority to obligate PennyMac to file a *Voluntary Dismissal **with** Prejudice*.

**PennyMac's (and Blanco's) Intentional and Material Breach of the**
**UNILATERAL CONTRACT between PennyMac (and Blanco) and Johnson,**
**Accompanied by a Fraudulent Act**

66. **PennyMac's (and Blanco's) Intentional and Material Breach of the UNILATERAL**
    **CONTRACT Formed between PennyMac (and Blanco) and Johnson, a South Carolina**
    **Legal Resident, on March 2, 2022.** On March 10, 2022, in a material breach of the
    UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South
    Carolina legal resident, as described in Paragraph 53, through PennyMac's attorney/agent,
    Archer, representing both Blanco and PennyMac, PennyMac and Blanco intentionally filed a
    Voluntary Dismissal *without Prejudice,* rather than *Voluntary Dismissal with Prejudice.*

67. **Fraudulent Intent related to the Breach.** In bad faith and with fraudulent intent, on March
    2, 2022, PennyMac and Blanco intentionally filed a Voluntary Dismissal *without Prejudice,*
    rather than *Voluntary Dismissal with Prejudice.* Such act is in bad faith and made with
    fraudulent intent because Archer, representing both Blanco and PennyMac, falsely stated that
    PennyMac was not obligated to file a *Voluntary Dismissal with Prejudice,* because (a)
    PennyMac (and Blanco) had no knowledge of either (1) PennyMac's (and Blanco's)
    UNILATERAL OFFER to file a *Voluntary Dismissal with Prejudice,* if Johnson, a South
    Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, as
    described in Subparagraphs (a) & (b) of Paragraph 53, or (2) Johnson's acceptance of said
    offer and consequential formation of a UNILATERAL CONTRACT between PennyMac
    (and Blanco) and Johnson, as described in Subparagraph (f) of Paragraph 53, and,
    notwithstanding the foregoing, (b) neither PennyMac's attorney/agent, Archer, representing
    both PennyMac and Blanco, nor Blanco had the authority to obligate PennyMac to file a

*Voluntary Dismissal **with** Prejudice*, instead of a *Voluntary Dismissal **without** Prejudice*. To the contrary, as alleged in Paragraphs 56 & 63, PennyMac (and Blanco) had knowledge of (1) PennyMac's (and Blanco's) UNILATERAL OFFER to file a *Voluntary Dismissal **with** Prejudice*, if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, as described in Subparagraphs (a) & (b) of Paragraph 53, and (2) Johnson's acceptance of said offer and consequential formation of the UNILATERAL CONTRACT with PennyMac (and Blanco), as described in Subparagraph (f) of Paragraph 53, where PennyMac (and Blanco) each knew that Blanco and PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, had the authority to obligate PennyMac to file a *Voluntary Dismissal **with** Prejudice*.

68. **The Fraudulent Act Accompanying the Breach**. In bad faith and with fraudulent intent, through PennyMac's attorney/agent, Archer, representing both Blanco and PennyMac, as described in Paragraph 54, PennyMac and Blanco intentionally filed a Voluntary Dismissal ***without** Prejudice,* rather than *Voluntary Dismissal **with** Prejudice*, because PennyMac was never obligated to file a *Voluntary Dismissal **with** Prejudice*. To the contrary, however, PennyMac and Blanco each knew that PennyMac was obligated to file a *Voluntary Dismissal **with** Prejudice* pursuant to the terms of the UNILATERAL CONTRACT, referenced in Paragraph 65, because, as alleged in Paragraphs 56 & 63, PennyMac (and Blanco) had knowledge of (1) PennyMac's (and Blanco's) UNILATERAL OFFER to file a *Voluntary Dismissal **with** Prejudice*, if Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000, as described in Subparagraphs (a) & (b) of Paragraph 53, and (2) Johnson's acceptance of said offer and consequential formation of the UNILATERAL CONTRACT with PennyMac (and Blanco), as described in Subparagraph (f)

of Paragraph 53, where PennyMac (and Blanco) each knew that Blanco and PennyMac's attorney/agent, Archer, representing both PennyMac and Blanco, had the authority to obligate PennyMac to file a *Voluntary Dismissal with Prejudice*. Within this context, PennyMac and Blanco each committed a fraudulent act accompanying the breach when PennyMac and Blanco and each claimed that PennyMac was not obligated to file a *Voluntary Dismissal with Prejudice*.

### Damages

69. As a direct and proximate result of the breach of the UNILATERAL CONTRACT, referenced in Paragraph 65, by each of PennyMac and Blanco, accompanied by a fraudulent act, Johnson suffered damages in the form of the loss of nullified attorneys' fees (and other costs) of over $47,000 in defense of Johnson's title to real property (Lots 16&18), when PennyMac filed a *Voluntary Dismissal without Prejudice*, rather than a *Voluntary Dismissal with Prejudice*. Because the legal effect of the filing of a *Voluntary Dismissal without Prejudice* in *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020) is to cause such action to become null and void, enabling PennyMac to sue Johnson again, damages (as alleged in Paragraph 57) directly resulting from PennyMac's (and Blanco's) Breach of the UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South Carolina legal resident, as described in Paragraphs 66-68, include the loss of Johnson's attorneys' fees of over $47,000 (and other costs) in defense against PennyMac's (and Blanco's) equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson (and his Wife, Elci Wijayaningsih).

70. **Punitive Damages.** The actions of PennyMac and Blanco, as herein described, were committed with either (a) an actual and deliberate intention to cause economic harm to Johnson or (b) an utter indifference or conscious disregard for Johnson's property, thereby constituting willful or wanton conduct and accordingly justify the awarding of exemplary and punitive damages, jointly and severally, in the amount of $200,000 to deter similar or repetitious conduct by PennyMac and Blanco in the future.

## COUNT II

### FRAUD IN THE INDUCEMENT TO ENTER A UNILATERAL CONTRACT

71. Count II of this Complaint is a contract claim for *Fraud in the Inducement to Enter a Unilateral Contract* against PennyMac and Blanco under the laws of the state of South Carolina.

72. **Jurisdiction and Venue.** Diversity Jurisdiction of this Court is proper under 28 U.S.C. § 1332, where this action is of a civil nature involving exclusive of interest and costs, an amount in controversy in excess of $75,000. Venue in this Court is proper because (a) the UNILATERAL CONTRACT formed between PennyMac (and Blanco) and Johnson, a South Carolina legal resident, as described in Paragraph 53, was formed in South Carolina and (b) injury to Johnson, as described in Paragraph 57, which was directly and proximately caused by PennyMac's (and Blanco's) fraud in the inducement of said unilateral contract, occurred in the state of South Carolina.

73. Johnson repeats and re-alleges each of the allegations contained in paragraphs 2 through 57 as if fully set forth herein.

74. **Respondeat Superior – Defendant PennyMac (Blanco).** Since:

(a) Defendant PennyMac (Blanco), acts only through its Agents;

(b) Each act of an Agent of Defendant PennyMac (Blanco), as herein described, was:

    (1) Related to and committed within the course and scope of employment,

    (2) Committed in furtherance of the interests and economic benefits of Defendant PennyMac (Blanco), and

    (3) Authorized or subsequently acquiesced to by Defendant PennyMac (Blanco);

(c) Defendant PennyMac (Blanco) derived some benefit from each act committed by an

Agent of Defendant PennyMac (Blanco), as herein described; and

(d) under the doctrines of respondeat superior and vicarious liability, the acts of Agents of

Defendant PennyMac (Blanco), as herein described:

(1) are deemed to be the acts of Defendant PennyMac (Blanco),

(2) are chargeable to Defendant PennyMac (Blanco), and

(3) are binding upon Defendant PennyMac (Blanco),

where Defendant PennyMac (Blanco), is vicariously responsible for the wrongful acts of its

agents and imposing vicarious liability upon Defendant PennyMac (Blanco) is not

inconsistent with the intent of laws of the state of South Carolina.

## PennyMac's (and Blanco's) Fraud in the Inducement of the Formation of the UNILATERAL CONTRACT Between PennyMac (and Blanco) and Johnson

75. **UNILATERAL OFFERS (REPRESENTATIONS).** As alleged in subparagraphs (a) & (b)

of Paragraph 53, on January 17, 2022, and February 25, 2022, through PennyMac's

attorney/agent, Archer, representing both Blanco and PennyMac, PennyMac and Blanco

made UNILATERAL OFFERS (REPRESENTATIONS) regarding PennyMac's (and

Blanco's) equitable reformation action against Johnson (and his Wife, Elci Wijayaningsih):

*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020).

Specifically, on January 17, 2022, and February 25, 2022, through PennyMac's

attorney/agent, Archer, representing both Blanco and PennyMac, PennyMac and Blanco

offered to file a *Voluntary Dismissal **with** Prejudice* if Johnson, a South Carolina legal

resident, paid off the balance of the PennyMac Note of about $273,000.

76. As alleged in Paragraph 56, (a) Blanco and PennyMac each had knowledge of the UNILATERAL OFFERS made by Archer, representing both Blanco and PennyMac, referenced in Paragraph 75, and (b) when such offers were made, Archer, representing both Blanco and PennyMac, had the authority to obligate PennyMac to file a *Voluntary Dismissal with Prejudice*.

77. **Falsity, Knowledge of Falsity and Materiality of the REPRESENTATIONS (UNILATERAL OFFERS).** However, with regard to the REPRESENTATIONS (UNILATERAL OFFERS), as described in Paragraph 75, at all relevant times, neither PennyMac, nor Blanco, had any intention of filing a *Voluntary Dismissal with Prejudice* (rather than a *Voluntary Dismissal without Prejudice*), if, in fact, Johnson, a South Carolina legal resident, paid off the balance of the PennyMac Note of about $273,000. Such a conditional promise was part of PennyMac's (and Blanco's) intentional design or plan to coerce and induce Johnson to pay off the PennyMac Note of about $273,000, which had a low interest rate (of about 3%) so that PennyMac could use such proceeds to acquire a debt security with a significantly higher rate of interest.

78. **PennyMac's (and Blanco's) Intent that Johnson ACCEPT the UNILATERAL OFFER (REPRESENTATION).** As alleged in subparagraph (e) of Paragraph 53, the UNILATERAL OFFERS made by PennyMac and Blanco, referenced in Paragraph 75, were never rescinded. Such a fact supports the allegation in Paragraph 77 that neither PennyMac, nor Blanco, had any intention of filing a *Voluntary Dismissal with Prejudice* (rather than a *Voluntary Dismissal without Prejudice*). Between January 17, 2022, and March 2, 2022, either PennyMac or Blanco could have easily rescinded such offer by notifying Johnson that PennyMac would not file a *Voluntary Dismissal with Prejudice*. Instead, however,

PennyMac and Blanco were each silent, intending that Johnson accept the UNILATERAL

OFFER and pay off the PennyMac Note of about $273,000.

79. **Based upon Johnson's Ignorance of the Falsity of the UNILATERAL OFFER (REPRESENTATION), Combined with Johnson's Reliance on PennyMac's (and Blanco's) False Promise (for which Johnson had a Right to such Reliance), Johnson ACCEPTED the UNILATERAL OFFER, Resulting in the FORMATION of the UNILATERAL CONTRACT**. As alleged in subparagraph (f) of Paragraph 53, on March 2, 2022, being totally ignorant of the falsity of PennyMac's (and Blanco's) UNILATERAL OFFER (REPRESENTATION), Johnson (who relied on PennyMac's (and Blanco's) promise to file a *Voluntary Dismissal with Prejudice*, where Johnson had a right to such reliance) paid off the balance ($273,826.25) of the PennyMac Note, using Johnson's funds in his South Carolina bank account, thereby (a) accepting the UNILATERAL OFFER made by PennyMac and Blanco, referenced in Paragraph 75, and contemporaneously, (b) forming a UNILATERAL CONTRACT between PennyMac (and Blanco) and Johnson, where, as alleged in Paragraphs 56 & 76, (1) Blanco and PennyMac each had knowledge of (i) the UNILATERAL OFFER, referenced in Paragraph 75, and (ii) Johnson's payment of the balance ($273,826.25) of the PennyMac Note and (2) Archer, representing both Blanco and PennyMac, had the authority to obligate PennyMac to file a *Voluntary Dismissal with Prejudice*.

**Damages**

80. **Injury to Johnson, Consequently and Proximately caused by PennyMac's (and Blanco's) Fraud in the Inducement.** Johnson suffered injury, which occurred in the state of South Carolina, as described in Paragraph 57, which was directly and proximately caused by

PennyMac's (and Blanco's) fraud in the inducement of the UNILATERAL CONTRACT, as described in Paragraphs 75-79. Specifically, Johnson suffered damages in the form of his loss of nullified attorneys' fees (and other costs) of over $47,000 in defense of Johnson's title to real property (Lots 16&18), when PennyMac filed a *Voluntary Dismissal without Prejudice*, rather than a *Voluntary Dismissal with Prejudice*. Because the legal effect of the filing of a *Voluntary Dismissal **without** Prejudice* in *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020) is to cause such action to become null and void, enabling PennyMac to sue Johnson again, damages (as alleged in Paragraph 57) directly resulting from PennyMac's (and Blanco's) fraud in the inducement of the UNILATERAL CONTRACT, as described in Paragraphs 75-79. include the loss of Johnson's attorneys' fees of over $47,000 (and other costs) of defending against PennyMac's (and Blanco's) equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson (and his Wife, Elci Wijayaningsih).

81. **Punitive Damages.** The actions of PennyMac and Blanco, as herein described, were committed with either (a) an actual and deliberate intention to cause economic harm to Johnson or (b) an utter indifference or conscious disregard for Johnson's property, thereby constituting willful or wanton conduct and accordingly justify the awarding of exemplary and punitive damages, jointly and severally, in the amount of $200,000 to deter similar or repetitious conduct by PennyMac and Blanco in the future.

## COUNT III
## ABUSE OF PROCESS

82. Count III of this Complaint is a North Carolina common law *Abuse of Process* tort claim

against PennyMac and Blanco, arising out of PennyMac's (and Blanco's) intentional and

malicious misuse or misapplication of its 2020 equitable reformation action (*PennyMac Loan

Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson, a

South Carolina legal resident, wherein, PennyMac and Blanco intentionally and maliciously

targeted such action against Johnson, a South Carolina legal resident, to accomplish ulterior

purposes not warranted by said action.

83. **Jurisdiction, Venue and Standing.** Diversity Jurisdiction of this Court is proper under 28

U.S.C. § 1332, where this action is of a civil nature involving exclusive of interest and costs,

an amount in controversy in excess of $75,000. Venue in this Court is proper because (a)

PennyMac and Blanco intentionally and maliciously targeted their 2020 equitable action

(*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020))

against Johnson, a South Carolina legal resident, to accomplish ulterior purposes not

warranted by such action (*see* Paragraph 43) and (b) injury to Johnson, as described in

Paragraph 90 and which was directly and proximately caused by PennyMac's (and Blanco's)

*Abuse of Process*, occurred, in part, in the state of South Carolina.

84. Johnson repeats and re-alleges each of the allegations contained in paragraphs 2 through 57

as if fully set forth herein.

85. **Respondeat Superior – Defendant PennyMac (Blanco).** Since:

    (a) Defendant PennyMac (Blanco), acts only through its Agents (e.g., Archer);

    (b) Each act of an Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein

        described, was:

        (1) Related to and committed within the course and scope of employment,

        (2) Committed in furtherance of the interests and economic benefits of Defendant

            PennyMac (Blanco), and

        (3) Authorized or subsequently acquiesced to by Defendant PennyMac (Blanco);

    (c) Defendant PennyMac (Blanco) derived some benefit from each act committed by an

        Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein described; and

    (d) under the doctrines of respondeat superior and vicarious liability, the acts of each Agent

        (e.g., Archer) of Defendant PennyMac (Blanco), as herein described:

        (1) are deemed to be the acts of Defendant PennyMac (Blanco),

        (2) are chargeable to Defendant PennyMac (Blanco), and

        (3) are binding upon Defendant PennyMac (Blanco),

where Defendant PennyMac (Blanco), is vicariously responsible for the wrongful acts of its

agents (e.g., Archer) and imposing vicarious liability upon Defendant PennyMac (Blanco) is

not inconsistent with the intent of laws of the state of North Carolina.

86. *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020) (a) is an

    equitable action, intentionally and maliciously targeting Johnson, a South Carolina legal

    resident, to reform a 2013 Deed of Trust, referenced in Paragraphs 14 & 15, and (b) was

    brought by PennyMac and Blanco on January 23, 2020, to accomplish ulterior purposes not

    warranted by such action.

87. As shown in Paragraphs 21-42, for more than two (2) years before the equitable reformation

action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020))

by PennyMac and Blanco against Johnson, referenced in Paragraph 86, was filed (on January

23, 2020), PennyMac attempted to coerce Johnson to voluntarily pay for hazard insurance

(e.g., force-placed insurance) on Lots16&18, based upon PennyMac's false contention that

hazard insurance on Lots 16&18 was required under the Deed of Trust, referenced in

Paragraphs 14 & 15, to insure PennyMac's beneficial/security interest in Lots 13,15&17

(vacant land).

88. **PennyMac's (and Blanco's) Ulterior Motives**. Not being deterred from its prior

unsuccessful attempts (over more than a two-year period) at coercing Johnson to voluntarily

pay for hazard insurance (e.g., lender force-placed insurance) on Lots16&18, a cost that

Johnson was not legally required to pay, PennyMac and Blanco combined to (a) continue

such oppressive efforts, (b) abuse their position of power, and (c) exploit Johnson's position

of weakness. Specifically, **as shown in Paragraph 43**, PennyMac changed its strategy by

combining with Blanco to intentionally and maliciously initiate, execute and use *PennyMac*

*Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020), filed January 23,

2020, against Johnson, a South Carolina legal resident, for foreign collateral damaging

purposes (i.e., damaging purposes, intended to be secured, not lawfully or properly

obtainable under an equitable reformation action), including to:

(a) coerce Johnson to pay multiple unlawful, invalid and void debts for which Johnson was

   not responsible (e.g., the 2019 lender force-placed insurance referenced in Paragraph 35);

(b) restrict Johnson's subsequent intended gift or encumbrance of Lots 16&18, e.g., (1)

   inhibiting Johnson's intended gift of Lots 16&18 to his daughter and (2) prohibiting

Johnson's intended refinancing of the PennyMac Note to take advantage of lower interest rates;

(c) oppress and interfere with Johnson's control over his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard and flood insurance on Lots 16&18], thereby gaining an advantage over such property;

(d) coerce Johnson to pay off the balance of the PennyMac Note, an act that Johnson could not be legally and regularly compelled to do; and

(e) oppress Johnson generally until the above referenced payments were made by Johnson.

89. **PennyMac's (and Blanco's) Acts of Misuse of Legal Process after Issuance**. After PennyMac and Blanco filed their equitable reformation action against Johnson, referenced in Paragraph 86, to reform a 2013 Deed of Trust referenced in Paragraphs 14 & 15, **as shown in Paragraphs 43-52 and Paragraphs 53-54**, PennyMac and Blanco used the existence of such action to gain an advantage over Johnson with respect to several collateral matters. Specifically, PennyMac and Blanco willfully committed the following acts, which were not proper in the regular prosecution of the reformation action, for the purpose of attaining some ends foreign to that end an equitable reformation action was designed to effect.

(a) On January 23, 2020, PennyMac and Blanco filed a *Notice of Lis Pendens* in the County of Brunswick, North Carolina, thereby clouding Johnson's clear title to Lots 16&18 as well as Lots 13,15&17, which had the effect of restricting Johnson's intended gift or encumbrance of Lots 16&18 (e.g., (1) Johnson's intended gift of Lots 16&18 to his daughter was inhibited and (2) Johnson's intended refinancing of his Note with PennyMac, to take advantage of lower interest rates, was prohibited), and oppressing

Johnson generally until Johnson paid the "cost" of lender force-placed insurance on Lots 16&18, unlawfully obtained by PennyMac from SGIC through Assurant.

(b) Between September 11-16, 2020, PennyMac unlawfully seized Johnson's money out of his bank account to pay for the unlawful, invalid and void debt determined by Assurant and associated with lender force-placed insurance on Lots 16&18, unlawfully obtained by PennyMac from SGIC through Assurant.

(c) Between January 23, 2020, and February 17, 2022, to coerce Johnson to pay multiple unlawful, invalid and void debts for which Johnson was not responsible (i.e., the unlawful, invalid and void debts determined by Assurant and associated with lender force-placed insurance on Lots 16&18, unlawfully obtained by PennyMac from SGIC through Assurant), PennyMac sent multiple letters threatening Johnson with economic harm, if Johnson did not pay the unlawful, invalid and void debts owed to SGIC.

(d) As shown in Paragraphs 53-54, beginning on January 17, 2022, to coerce and compel Johnson to pay off the balance of the PennyMac Note, which Johnson paid on March 2, 2022, using funds from Johnson's South Carolina bank account, PennyMac and Blanco offered to file a Voluntary Dismissal **with** Prejudice, if Johnson paid off the balance ($273,800) of the PennyMac Note (i.e., UNILATERAL OFFER). However, after Johnson ACCEPTED PennyMac's (and Blanco's) UNILATERAL OFFER by paying off the balance ($273,826.25) of the PennyMac Note, thereby forming a UNILATERAL CONTRACT, PennyMac and Blanco breached said contract, without notice to Johnson, and, instead, filed a Voluntary Dismissal **without** Prejudice.

90. **Damages: Injury to Johnson Directly and Proximately caused by PennyMac's (and Blanco's) Acts of Misuse of Legal Process after Issuance.** Johnson, a South Carolina legal resident, has suffered damages, directly and proximately caused by PennyMac's (and Blanco's) acts of misuse of legal process after issuance, **as described in Paragraph 89,** arising from PennyMac's (and Blanco's) intentionally malicious perversion and misuse of their 2020 equitable action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson for the equitable reformation of a 2013 Deed of Trust. Such damages include the following.

(a) The seizure of Johnson's money from Johnson's South Carolina bank account to pay for the unlawful, invalid and void debt, determined by Assurant and associated with lender force-placed insurance on Lots 16&18, which was unlawfully obtained by PennyMac from SGIC through Assurant.

(b) As described in Paragraph 43, injury to Johnson, directly and proximately caused by PennyMac's (and Blanco's) filing of a *Notice of Lis Pendens* in the County of Brunswick, North Carolina, on January 23, 2020, thereby clouding Johnson's clear title to Lots 16&18, included (1) the restriction of Johnson's intended gift or encumbrance of Lots 16&18 to his daughter, (2) prohibiting Johnson from refinancing his Note with PennyMac to take advantage of a lower interest and (3) generally oppressing Johnson.

(c) The interference with Johnson's beneficial interest in (and control over) his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard or flood insurance on Lots 16&18], thereby gaining an advantage over such real property.

(d) The coercion and compelling of Johnson to refinance and pay off the balance ($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina bank

account, an act that Johnson could not be legally and regularly be compelled to do. The foregone benefit ($332,723) of a low interest rate is the difference between interest paid (and to be paid) based on the PennyMac Note's interest rate (3%) versus the refinancing interest rate (12%).

91. **Punitive Damages.** The actions of PennyMac and Blanco, as herein described, were committed with either (a) an actual and deliberate intention to cause harm to Johnson's property or (b) an utter indifference or conscious disregard for Johnson's property, thereby constituting willful or wanton conduct and accordingly justify the awarding of exemplary and punitive damages, jointly and severally, in the amount of $500,000 to deter similar or repetitious conduct by PennyMac and Blanco in the future.

## COUNT IV
## MALICIOUS PROSECUTION

92. Count IV of this Complaint is a North Carolina common law *Malicious Prosecution* tort

claim against PennyMac and Blanco, arising out of PennyMac's (and Blanco's) prior civil

court proceeding (i.e., *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth

County, NC 2020)), filed January 23, 2020, against Johnson, wherein PennyMac and Blanco

intentionally and maliciously targeted such action against Johnson, a South Carolina legal

resident.

93. **Jurisdiction, Venue and Standing.** Diversity Jurisdiction of this Court is proper under 28

U.S.C. § 1332, where this action is of a civil nature involving exclusive of interest and costs,

an amount in controversy in excess of $75,000. Venue in this Court is proper because (a)

PennyMac and Blanco intentionally and maliciously targeted their 2020 equitable action

(*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020))

against Johnson, a South Carolina legal resident, and (b) injury to Johnson, as described in

Paragraph 101, which was directly and proximately caused by PennyMac's (and Blanco's)

*Malicious Prosecution*, occurred, in part, in the state of South Carolina.

94. Johnson repeats and re-alleges each of the allegations contained in paragraphs 2 through 57

as if fully set forth herein.

95. **Respondeat Superior – Defendant PennyMac (Blanco).** Since:

    (a) Defendant PennyMac (Blanco), acts only through its Agents (e.g., Archer);

    (b) Each act of an Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein

        described, was:

        (1) Related to and committed within the course and scope of employment,

        (2) Committed in furtherance of the interests and economic benefits of Defendant

            PennyMac (Blanco), and

        (3) Authorized or subsequently acquiesced to by Defendant PennyMac (Blanco);

    (c) Defendant PennyMac (Blanco) derived some benefit from each act committed by an

        Agent (e.g., Archer) of Defendant PennyMac (Blanco), as herein described; and

    (d) under the doctrines of respondeat superior and vicarious liability, the acts of each Agent

        (e.g., Archer) of Defendant PennyMac (Blanco), as herein described:

        (1) are deemed to be the acts of Defendant PennyMac (Blanco),

        (2) are chargeable to Defendant PennyMac (Blanco), and

        (3) are binding upon Defendant PennyMac (Blanco),

where Defendant PennyMac (Blanco), is vicariously responsible for the wrongful acts of its

agents (e.g., Archer) and imposing vicarious liability upon Defendant PennyMac (Blanco) is

not inconsistent with the intent of laws of the state of North Carolina.

96. **The Prior Civil Court Proceeding was brought by PennyMac and Blanco Against**

**Johnson.** *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC

2020), i.e., the prior civil court proceeding filed January 23, 2020, (a) is an equitable action,

intentionally and maliciously targeting Johnson, a South Carolina legal resident, to reform a

2013 Deed of Trust, referenced in Paragraphs 14 & 15, and (b) alleging malice, was brought

by PennyMac and Blanco on January 23, 2020, to accomplish ulterior purposes not warranted by such action.

97. As shown in Paragraphs 21-42, for more than two (2) years before the equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) by PennyMac and Blanco against Johnson, referenced in Paragraph 96, was filed (on January 23, 2020), PennyMac attempted to coerce Johnson to voluntarily pay for hazard and flood insurance (e.g., force-placed insurance) on Lots16&18, based upon PennyMac's false contention that hazard and flood insurance on Lots 16&18 were required under the Deed of Trust, referenced in Paragraphs 14 & 15, to insure PennyMac's beneficial/security interest in Lots 13,15&17 (vacant land).

98. **PennyMac and Blanco Acted with Malice**. Not being deterred from its prior unsuccessful attempts (over more than a two-year period as described in Paragraph 97) at coercing Johnson to voluntarily pay for hazard insurance (e.g., lender force-placed insurance) on Lots16&18, a cost that Johnson was not legally required to pay, PennyMac and Blanco combined to (a) continue such oppressive efforts, (b) abuse their position of power and (c) exploit Johnson's position of weakness. Specifically, **as shown in Paragraph 43**, PennyMac changed its strategy by combining with Blanco to intentionally and maliciously initiate, execute and use *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020), filed January 23, 2020, against Johnson, a South Carolina legal resident, for foreign collateral damaging purposes (i.e., damaging purposes, intended to be secured, not lawfully or properly obtainable under an equitable reformation action), including to:

(a) coerce Johnson to pay multiple unlawful, invalid and void debts for which Johnson was not responsible (e.g., the 2019 lender force-placed insurance referenced in Paragraph 35);

(b) restrict Johnson's subsequent intended gift or encumbrance of Lots 16&18, e.g., (1) inhibiting Johnson's intended gift of Lots 16&18 to his daughter and (2) prohibiting Johnson's intended refinancing of his Note with PennyMac to take advantage of lower interest rates;

(c) oppress and interfere with Johnson's control over his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard insurance on Lots 16&18], thereby gaining an advantage over such property;

(d) coerce Johnson to pay off the balance of the PennyMac Note, an act that Johnson could not be legally and regularly compelled to do; and

(e) oppress Johnson generally until the above referenced payments were made by Johnson.

99. **PennyMac and Blanco Acted without Probable Cause in Bringing the Prior Civil Court Proceeding**. In bringing the prior civil court proceeding against Johnson, a South Carolina legal resident, as described in Paragraph 96, PennyMac acted without probable cause, since:

(a) In July 2013, after successfully passing through several quality review processes, Weststar offered Johnson specific unalterable loan terms that included Johnson and his spouse transferring to Weststar a beneficial/security interest in Lots 13,15&17 (and no other).

(b) On July 18, 2013, after reviewing Weststar's offer of unalterable loan terms, Johnson and his spouse concluded that Weststar intended that, in accepting such loan terms, Johnson and his spouse transfer to Weststar a beneficial/security interest in Lots 13,15&17 (and no other).

(c) Prior to July 18, 2013, there had been no discussion or agreement among or between any of the parties as to the specific property that Weststar would require or describe as security for the loan in its offer of unalterable loan terms.

(d) On July 21, 2013, Johnson and his spouse (1) accepted Weststar's offer of unalterable loan terms, (2) intended to transfer to Weststar a beneficial/security interest in Lots 13,15&17 (and no other) and (3) did, if fact, transfer to Weststar a beneficial/security interest in Lots 13,15&17 (and no other).

(e) In September 2013, PennyMac had knowledge that it had a beneficial/security interest in Lots 13,15&17 (and no other).

100. **PennyMac's (and Blanco's) Prior Civil Court Proceeding against Johnson Terminated in Johnson's Favor**. PennyMac's (and Blanco's) prior civil court proceeding against Johnson (i.e., *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)), filed January 23, 2020, terminated in Johnson's favor. Although PennyMac and Blanco offered to file a Voluntary Dismissal **with** Prejudice, if Johnson paid off the balance of the PennyMac Note, after Johnson paid off the balance ($273,826.25) of the PennyMac Note, PennyMac and Blanco breached the UNILATERAL CONTRACT with Johnson and, instead, filed a Voluntary Dismissal without Prejudice. See Counts I & II, above.

101.    **Special Damages directly and proximately caused by PennyMac's (and Blanco's)**
**Prior Civil Court Proceeding against Johnson.** Johnson, a South Carolina legal resident,
has suffered special damages (i.e., damaging effects, which are damages incurred that are
different from those common damages incurred by any defendant that is unsuccessfully
sued), directly and proximately caused by PennyMac's (and Blanco's) (a) initiating,
executing and using *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth
County, NC 2020), filed January 23, 2020 against Johnson, a South Carolina legal resident,
and subsequently (b) filing a *Notice of Lis Pendens*, all for foreign collateral damaging
purposes (i.e., damaging purposes, intended to be secured, not lawfully or properly
obtainable under an equitable reformation action), which are described in Paragraph 98. Such
special damages include:

(a) The seizure of Johnson's money from Johnson's South Carolina bank account to pay for
the unlawful, invalid and void debt determined by Assurant and associated with lender
force-placed insurance, unlawfully obtained by PennyMac from SGIC through Assurant.

(b) As described in Paragraph 43, injury to Johnson, directly and proximately caused by
PennyMac's (and Blanco's) filing of a *Notice of Lis Pendens* in the County of Brunswick,
North Carolina, on January 23, 2020, thereby clouding Johnson's clear title to Lots
16&18, including (1) the restriction of Johnson's intended gift or encumbrance of Lots
16&18, (2) prohibiting Johnson from refinancing his Note with PennyMac to take
advantage of a lower interest and (3) generally oppressing Johnson.

(c) The interference with Johnson's beneficial interest in (and control over) his real property
(Lots 16&18) [including the business decision to obtain (or not to obtain) hazard or flood
insurance on Lots 16&18], thereby gaining an advantage over such real property.

(d) The coercion and compelling of Johnson to refinance and pay off the balance

($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina bank

account, an act that Johnson could not be legally and regularly be compelled to do.  The

foregone benefit ($332,723) of a low interest rate is the difference between interest paid

(and to be paid) based on the PennyMac Note's interest rate (3%) versus the refinancing

interest rate (12%).

102.    **Punitive Damages.** The actions of PennyMac and Blanco, as herein described, were

committed with either (a) an actual and deliberate intention to cause harm to Johnson's

property or (b) an utter indifference or conscious disregard for Johnson's property, thereby

constituting willful or wanton conduct and accordingly justify the awarding of exemplary and

punitive damages, joint and severally, in the amount of $500,000 to deter similar or

repetitious conduct by PennyMac and Blanco in the future.

## COUNT V
### PENNYMAC'S UNFAIR AND DECEPTIVE TRADE PRACTICES
### PURSUANT TO N.C.G.S. §75-1.1, *ET AL.*

103.    Count V of this Complaint is a claim against PennyMac for unfair or deceptive trade

practices pursuant to N.C.G.S. §75-1.1, *et al.* ("NCUDTP").

104.    **Jurisdiction, Venue and Standing.** Diversity Jurisdiction of this Court is proper under

28 U.S.C. § 1332, where this action is of a civil nature involving exclusive of interest and

costs, an amount in controversy in excess of $75,000. Venue in this Court is proper because:

(a) PennyMac abused its position of power and exploited Johnson's position of weakness by

engaging in unfair and deceptive trade practices, in violation of N.C.G.S. §75-1.1, *et al.*,

wherein:

(1) PennyMac intentionally and maliciously initiated, executed (targeted) and used its

2020 equitable action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436

(Forsyth County, NC 2020)) against Johnson, a South Carolina legal resident, for

foreign collateral purposes (i.e., purposes not within the normal scope of reformation

actions), including to coerce and compel Johnson to refinance and pay off the balance

of the PennyMac Note, an act that Johnson could not be legally and regularly

compelled to do, and

(2) as part of its fraudulent design to coerce and compel Johnson to refinance and pay off

the balance of the PennyMac Note, (i) PennyMac offered to file a *Voluntary*

*Dismissal with Prejudice*, if Johnson refinanced and paid off the balance ($273,800)

of the PennyMac Note (the UNILATERAL OFFER), but (ii) when Johnson

ACCEPTED PennyMac's UNILATERAL OFFER, thereby forming a

UNILATERAL CONTRACT in South Carolina by refinancing and paying off the

balance ($273,826.25) of the PennyMac Note from Johnson's South Carolina bank account, PennyMac breached said UNILATERAL CONTRACT, accompanied by fraudulent acts (Count I) or, in the alternative, committed fraud in the inducement of said UNILATERAL CONTRACT (Count II), and

(b) injury to Johnson, as described in Paragraph 111, was directly and proximately caused by PennyMac's unfair and deceptive trade practices, in violation of N.C.G.S. §75-1.1, *et al.*, which occurred, in part, in the state of South Carolina.

105. Johnson repeats and re-alleges each of the allegations contained in paragraphs 2 through 57 as if fully set forth herein.

106. **Respondeat Superior – Defendant PennyMac**. Since:

(a) Defendant PennyMac acts only through its Agents (e.g., Blanco and Archer);

(b) Each act of an Agent of Defendant PennyMac (e.g., Blanco and Archer), as herein described, was:

(1) Related to and committed within the course and scope of employment,

(2) Committed in furtherance of the interests and economic benefits of Defendant PennyMac, and

(3) Authorized or subsequently acquiesced to by Defendant PennyMac;

(c) Defendant PennyMac derived some benefit from each act committed by an Agent of Defendant PennyMac (e.g., Blanco and Archer), as herein described; and

(d) under the doctrines of respondeat superior and vicarious liability, the acts of Agents of Defendant PennyMac (e.g., Blanco and Archer), as herein described:

(1) are deemed to be the acts of Defendant PennyMac,

(2) are chargeable to Defendant PennyMac, and

(3) are binding upon Defendant PennyMac,

where Defendant PennyMac is vicariously responsible for the wrongful acts of its Agents

(e.g., Blanco and Archer) and imposing vicarious liability upon Defendant PennyMac is not

inconsistent with the intent of laws of the state of North Carolina.

### PennyMac's Unfair and Deceptive Practices in Suing Debtors/Property Owners for the Reformation of a Mortgage/Deed of Trust

107.    **PennyMac's "Normal Business Practice."** PennyMac, as a lender, to secure a loan, has

a beneficial/security interest ("in-rem rights") in real property described in a Deed of Trust.

Furthermore, PennyMac has been (and continues to be) engaged in the "normal business

practice" of (a) employing an attorney as its Agent (e.g., Blanco) and (b) using said attorney

(e.g., Blanco)  to intentionally and maliciously initiate, execute (target) and use an equitable

action to reform a Deed of Trust  (e.g., *PennyMac Loan Services, LLC v. Johnson*, 20 CVD

436 (Forsyth County, NC 2020)) against a borrower (e.g., Johnson, a South Carolina legal

resident) for foreign collateral purposes (i.e., purposes not within the normal scope of

reformation actions), e.g., as described in Paragraphs 88 (Count I) & 98 (Count II), including

to coerce and compel the borrower (e.g., Johnson) to refinance and pay off the balance of the

PennyMac Note, an act that the borrower (e.g., Johnson) could not be legally and regularly

compelled to do, so that PennyMac may reinvest such proceeds at a higher interest rate. In

this case, the borrower (e.g., Johnson) foregoes the benefit of a low interest rate and

PennyMac generates additional revenue. Within this context, PennyMac abused its position

of power and exploited Johnson's position of weakness by engaging in two (2) unfair and

deceptive trade practices, in violation of N.C.G.S. §75-1.1, *et al.*, as follows.

108.     **Unfair/Deceptive Practice No. 1.** PennyMac abused its position of power and exploited

Johnson's position of weakness in violation of N.C.G.S. §75-1.1, when PennyMac:

(a) employed a North Carolina attorney as its Agent (Blanco) and

(b) used said attorney (Blanco) to intentionally and maliciously initiate, execute (target) and

use an equitable action to reform a Deed of Trust  (e.g., *PennyMac Loan Services, LLC v.*

*Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson, a South Carolina

legal resident, for foreign collateral purposes (i.e., purposes not within the normal scope

of reformation actions), as described in Paragraphs 88 & 89 (*see* Count III, incorporated

by reference herein) and 98 & 99 (*see* Count IV, incorporated by reference herein),

including to coerce and compel Johnson to refinance and pay off the balance of the

PennyMac Note, an act that Johnson could not be legally and regularly compelled to do,

so that PennyMac may reinvest such proceeds at a higher interest rate, directly causing

Johnson to lose the benefit of a low interest rate, while PennyMac generates additional

revenue.

In particular, in violation of North Carolina law, PennyMac had its Agent (Blanco) sue the

Johnson in equity to reform a Deed of Trust in a county of North Carolina (Forsyth County),

which is hundreds of miles away from the location of the property described in such Deed of

Trust (e.g., Brunswick County) for which PennyMac has a beneficial interest, although

PennyMac did, in fact, file a *Notice of Lis Pendens* in the North Carolina county within

which the property is located (e.g., Brunswick County). Here, for a variety of reasons (e.g.,

lack of either (1) an in-depth understanding of the law or (2) the financial means to hire an

attorney), PennyMac expects that Johnson will not be able to effectively defend against the

suit in equity or, at the very least, PennyMac will make the cost of defense economically

prohibitive. In this case, by violating North Carolina law, with minimal cost, PennyMac

expects to enlarge the real property described in such Deed of Trust, for which PennyMac

has a beneficial/security interest, thereby (i) enlarging the real property over which

PennyMac has control and (ii) forcibly purging such real property from its owner (Johnson).

109.     **Unfair/Deceptive Practice No. 2.** PennyMac abused its position of power and exploited

Johnson's position of weakness, in violation of N.C.G.S. §75-1.1, when, as part of its

fraudulent design to coerce and compel Johnson to refinance and pay off the balance of the

PennyMac Note, (a) PennyMac offered to file a *Voluntary Dismissal **with Prejudice***, if

Johnson refinanced and paid off the balance ($273,800) of the PennyMac Note (the

UNILATERAL OFFER), but (b) after Johnson ACCEPTED PennyMac's UNILATERAL

OFFER, thereby forming a UNILATERAL CONTRACT in South Carolina by refinancing at

a much higher rate and paying off the balance ($273,826.25) of the PennyMac Note from

Johnson's South Carolina bank account, PennyMac breached said UNILATERAL

CONTRACT, accompanied by fraudulent acts (*see* Count I, incorporated by reference

herein) or, in the alternative, committed fraud in the inducement of said UNILATERAL

CONTRACT (*see* Count II, incorporated by reference herein).

### Unfair/Deceptive Practices Nos. 1&2 are in or affect Commerce

110.     Unfair/Deceptive Practices Nos. 1&2 are in or affect commerce.

**Unfair/Deceptive Practices Nos. 1 & 2 Directly and Proximately Caused Injury to Johnson**

111.    Unfair/Deceptive Practices Nos. 1 & 2 directly and proximately caused the following

injury to Johnson.

(a) Unfair/Deceptive Practices No. 1.

As described in Paragraph 90 (Count III) and Paragraph 101 (Count IV):

(1) The seizure of Johnson's money from Johnson's South Carolina bank account to pay

for the unlawful, invalid and void debt determined by Assurant and associated with

lender force-placed insurance, unlawfully obtained by PennyMac from SGIC through

Assurant.

(2) As described in Paragraph 43, injury to Johnson, directly and proximately caused by

PennyMac's (and Blanco's) filing of a *Notice of Lis Pendens* in the County of

Brunswick, North Carolina, on January 23, 2020, thereby clouding Johnson's clear

title to Lots 16&18, including (1) the restriction of Johnson's intended gift or

encumbrance of Lots 16&18, (2) prohibiting Johnson from refinancing his Note with

PennyMac to take advantage of a lower interest and (3) generally oppressing Johnson.

(3) The interference with Johnson's beneficial interest in (and control over) his real

property (Lots 16&18) [including the business decision to obtain (or not to obtain)

hazard or flood insurance on Lots 16&18], thereby gaining an advantage over such

real property.

(4) The coercion and compelling of Johnson to refinance and pay off the balance

($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina

bank account, an act that Johnson could not be legally and regularly be compelled to

do.  The foregone benefit ($332,723) of a low interest rate is the difference between

interest paid (and to be paid) based on the PennyMac Note's interest rate (3%) versus the refinancing interest rate (12%).

(b) Unfair/Deceptive Practices No. 2.

As described in Paragraph 69 (Count I) and Paragraph 80 (Count II):

Johnson suffered damages in the form of his loss of nullified attorneys' fees (and other costs) of over $47,000 in defense of Johnson's title to real property (Lots 16&18), when PennyMac filed a *Voluntary Dismissal without Prejudice*, rather than a *Voluntary Dismissal with Prejudice*. Because the legal effect of the filing of a *Voluntary Dismissal **without** Prejudice* in *PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020) is to cause such action to become null and void, enabling PennyMac to sue Johnson again, damages (as alleged in Paragraph 57) directly resulting from PennyMac's (and Blanco's) fraud in the inducement of the UNILATERAL CONTRACT, as described in Paragraphs 75-79. include the loss of Johnson's attorneys' fees of over $47,000 (and other costs) of defending against PennyMac's (and Blanco's) equitable reformation action (*PennyMac Loan Services, LLC v. Johnson*, 20 CVD 436 (Forsyth County, NC 2020)) against Johnson (and his Wife, Elci Wijayaningsih).

112.    **Punitive Damages.** The actions of PennyMac, as herein described, were committed with either (a) an actual and deliberate intention to cause harm to Johnson's property or (b) an utter indifference or conscious disregard for Johnson's property, thereby constituting willful or wanton conduct and accordingly justify the awarding of exemplary and punitive damages in the amount of $800,000 to deter similar or repetitious conduct by PennyMac in the future.

**WHEREFORE**, Johnson prays for MONEY DAMAGES as follows:

## COUNT I - MONEY DAMAGES

Judgment against Defendants PennyMac and Blanco, jointly and severally, as follows:

-- for general and special damages, including wasted and nullified attorneys' fees of over $47,000 in defense of Johnson's title to real property (Lots 16&18),

-- for punitive damages in the amount of $200,000,

-- for reasonable attorney's fees,

-- for costs of suit herein incurred,

-- for pre- and post-judgment interest, and

-- for such other and further relief as the Court deems equitable in the circumstances.

## COUNT II - MONEY DAMAGES

Judgment against Defendants PennyMac and Blanco, jointly and severally, as follows:

-- for those general and special damages, including wasted and nullified attorneys' fees of over $47,000 in defense of Johnson's title to real property (Lots 16&18),

-- for punitive damages in the amount of $200,000,

-- for reasonable attorney's fees,

-- for costs of suit herein incurred,

-- for pre- and post-judgment interest, and

-- for such other and further relief as the Court deems equitable in the circumstances.

**COUNT III - MONEY DAMAGES**

Judgment against Defendants PennyMac and Blanco, jointly and severally, as follows:

-- for those general and special damages of

--- $600 for the seizure of Johnson's money from Johnson's South Carolina bank account to pay for the unlawful, invalid and void debt determined by Assurant and associated with lender force-placed insurance, unlawfully obtained by PennyMac from Insurance Company through Assurant,

--- $400,000 for the restriction of Johnson's intended gift of Lots 16&18 ($67,277) to his daughter and encumbrance of Lots 16&18, especially prohibiting Johnson's refinancing of his Note with PennyMac to take advantage of lower interest rates ($332,723),

--- $100,000 for the interference with Johnson's beneficial interest in (and control over) his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard insurance on Lots 16&18], thereby gaining an unlawful advantage over such real property, and

--- $273,826 for the coercion and compelling of Johnson to pay off the balance ($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina bank account, an act that Johnson could not be legally and regularly be compelled to do.

-- for punitive damages in the amount of $500,000,

-- for reasonable attorney's fees,

-- for costs of suit herein incurred,

-- for pre- and post-judgment interest, and

-- for such other and further relief as the Court deems equitable in the circumstances.

## COUNT IV - MONEY DAMAGES

Judgment against Defendants PennyMac and Blanco, jointly and severally, as follows:

-- for those general and special damages of

   --- $600 for the seizure of Johnson's money from Johnson's South Carolina bank account to pay for the unlawful, invalid and void debt determined by Assurant and associated with lender force-placed insurance, unlawfully obtained by PennyMac from Insurance Company through Assurant,

   --- $400,000 for the restriction of Johnson's intended gift of Lots 16&18 ($67,277) to his daughter and encumbrance of Lots 16&18, especially prohibiting Johnson's refinancing of his Note with PennyMac to take advantage of lower interest rates ($332,723),

   --- $100,000 for the interference with Johnson's beneficial interest in (and control over) his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard insurance on Lots 16&18], thereby gaining an unlawful advantage over such real property, and

   --- $273,826 for the coercion and compelling of Johnson to pay off the balance ($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina bank account, an act that Johnson could not be legally and regularly be compelled to do.

-- for punitive damages in the amount of $500,000,

-- for reasonable attorney's fees,

-- for costs of suit herein incurred,

-- for pre- and post-judgment interest, and

-- for such other and further relief as the Court deems equitable in the circumstances.

## COUNT V - MONEY DAMAGES

Judgment against Defendants PennyMac and Blanco, jointly and severally, as follows:

-- for treble those general and special damages of

--- wasted and nullified attorneys' fees of over $47,000 in defense of Johnson's title to real property (Lots 16&18),

--- $600 for the seizure of Johnson's money from Johnson's South Carolina bank account to pay for the unlawful, invalid and void debt determined by Assurant and associated with lender force-placed insurance, unlawfully obtained by PennyMac from Insurance Company through Assurant,

--- $400,000 for the restriction of Johnson's intended gift of Lots 16&18 ($67,277) to his daughter and encumbrance of Lots 16&18, especially prohibiting Johnson's refinancing of his Note with PennyMac to take advantage of lower interest rates ($332,723),

--- $100,000 for the interference with Johnson's beneficial interest in (and control over) his real property (Lots 16&18) [including the business decision to obtain (or not to obtain) hazard insurance on Lots 16&18], thereby gaining an unlawful advantage over such real property, and

--- $273,826 for the coercion and compelling of Johnson to pay off the balance ($273,826.25) of the PennyMac Note, using funds from Johnson's South Carolina bank account, an act that Johnson could not be legally and regularly be compelled to do.

-- for punitive damages in the amount of $800,000,

-- for reasonable attorney's fees,

-- for costs of suit herein incurred,

-- for pre- and post-judgment interest, and

--  for such other and further relief as the Court deems equitable in the circumstances.

Dated: July 18, 2023

*Brad R. Johnson*

**BRAD R. JOHNSON, Plaintiff, Pro Se**

Brad R. Johnson, Ph.D., J.D., C.P.A. (Inactive, OR, #4278)
8669 Laurel Woods Drive
Myrtle Beach, SC  29588
(843) 661-1427
bjohnson@fmarion.edu

## VERIFICATION

Under penalties of perjury, the undersigned certifies that the statements set forth in this pleading are true and correct, except as to matters stated to be on information and belief and as to such matters the undersigned certifies that he believes the same to be true.

Dated: July 18, 2023

*Brad R. Johnson*

**BRAD R. JOHNSON, Plaintiff, Pro Se**

Brad R. Johnson, Ph.D., J.D., C.P.A. (Inactive, OR, #4278)
8669 Laurel Woods Drive
Myrtle Beach, SC  29588
(843) 661-1427
bjohnson@fmarion.edu

## DEMAND FOR JURY TRIAL

Plaintiff, Brad R. Johnson, demands a jury trial on all Counts of this Original Complaint.

Dated: July 18, 2023

**BRAD R. JOHNSON, Plaintiff, Pro Se**

Brad R. Johnson, Ph.D., J.D., C.P.A. (Inactive, OR, #4278)
8669 Laurel Woods Drive
Myrtle Beach, SC  29588
(843) 661-1427
bjohnson@fmarion.edu