IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BRAD R. JOHNSON, | ) | Case No.: 4:23-cv-03426-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| PENNYMAC LOAN SERVICES, LLC and | ) | |
| BLANCO TACKBERRY & | ) | |
| MATAMOROS, P.A., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court with the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] (DE 41.) Plaintiff Brad R. Johnson ("Plaintiff" or "Johnson") sued Defendants PennyMac Loan Services, LLC ("PennyMac"), and Blanco Tackberry, & Matamoros, P.A. ("Blanco"), for claims arising out of Plaintiff's purchase of Lots 16 and 18 ("Lots 16 and 18"), Block 186, Section N-6, Long Beach (now Oak Island), North Carolina, which were improved with a residence and insured with homeowners and flood insurance coverage, and Plaintiff's subsequent purchase of Lots 13, 15, and 17 ("Vacant Lots"), Block 186, Section N-6, Long Beach (now Oak Island), North Carolina, which are undeveloped lots. (DE 15, ¶¶ 4-5.) Plaintiff alleges state law causes of action for (1) Breach of a Unilateral Contract Accompanied by Fraudulent Act, (2) Fraud in the Inducement to

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Enter a Unilateral Contract, (3) Abuse of Process, (4) Malicious Prosecution, (5) Unfair or Deceptive Trade Practices pursuant to N.C.G.S. § 75-1.1 et al., and (6) Civil Conspiracy.[2]

On January 10, 2024, PennyMac moved to dismiss arguing "(i) Johnson lacks standing to bring the only claims that are not barred by the *res judicata* effect of the North Carolina case, (ii) this Court lacks personal jurisdiction over PennyMac with respect to these claims, and (iii) Johnson cannot allege facts sufficient to state a claim against PennyMac." (DE 17, p. 1.) On February 7, 2024, Blanco filed an Amended Motion to Dismiss Plaintiff's Amended Complaint arguing "(1) North Carolina does not recognize a claim for breach of contract accompanied by fraudulent acts, (2) the fraud claims are not pled with specificity nor do the facts alleged support the fraud claims, (3) the underlying reformation action has been dismissed and cannot be refiled, (4) malicious prosecution cannot survive when the facts alleged do not support such a claim or the required special damages, (5) there are no facts that amount to abuse of process after the filing of the Reformation Action, and (6) sufficient facts are not alleged to support a claim of civil conspiracy." (DE 24, pp. 1-2.) Plaintiff filed responses in opposition. (DE 31 and 37.) The Report was issued on July 24, 2024, recommending the motions be granted and this case dismissed. (DE 41.) Accordingly, the Court adopts the Report for the reasons stated below.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background relating to the objections raised by Johnson.

---

[2] Plaintiff alleges that subject matter jurisdiction is proper in this Court based on the diversity of the parties and an amount in controversy greater than $75,000 pursuant to 28 U.S.C. § 1332.

The Court notes that Plaintiff filed a Verified First Amended Complaint (DE 15) without leave of this Court and more than 21 days after service of Blanco's responsive pleading. The Amended Complaint includes a sixth claim for civil conspiracy. The Court declines to strike the Amended Complaint given this ruling.

This is the third case Plaintiff has filed against PennyMac arising from a deed reformation action PennyMac filed against Plaintiff. Blanco is the firm that represented PennyMac in the deed reformation action, and this is the first case Plaintiff has filed against it. Plaintiff purchased Lots 16 and 18, which were improved with a residence. (DE 15, ¶ 4.) Plaintiff purchased homeowners and flood insurance coverage for the residence. (*Id.* ¶ 5.) Thereafter, Plaintiff purchased the Vacant Lots. (*Id.* ¶ 6.) Plaintiff later combined the Vacant Lots with Lots 16 and 18 (collectively, "Property") for tax and assessment purposes. (*Id.* ¶ 7.)

In June 2013, Plaintiff applied for a loan from Weststar Mortgage, Inc., and an appraisal was conducted on the Property, including the improved residence. (*Id.* ¶¶ 8-9.) Johnson's loan application was approved ("2013 Loan"), and a Deed of Trust was recorded. (*Id.* ¶¶ 12-14.) In error, the Deed of Trust purports to encumber only the Vacant Lots. (*Id.* ¶ 15.) Later, in 2013, the Weststar Mortgage was sold to PennyMac. (*Id.* ¶ 21.) From the start of the 2013 Loan until September 20, 2017, first Weststar and then PennyMac created and maintained an escrow account and used the escrowed funds to pay for homeowners and flood insurance coverage for the house. (*Id.* ¶¶ 19, 24.) However, in September 2017, Plaintiff called PennyMac and requested that it discontinue paying for the homeowners and flood insurance because it only had a lien on vacant land. (*Id.* ¶ 24.) In April 2018, PennyMac paid to renew the homeowner's insurance. (*Id.* ¶ 26.) Then PennyMac informed Plaintiff that it would close the escrow account, but he was still required to pay for property insurance. (*Id.* ¶ 28.)

In September 2018 and after, Plaintiff corresponded with PennyMac, who allegedly told him that if he separated Lots 16 and 18 from the Vacant Lots, it would not require him to maintain property insurance coverage on the Vacant Lots but would continue to require flood insurance. (*Id.* ¶ 30.) On March 22, 2019, Plaintiff separated the Vacant Lots from Lots 16 and 18. (*Id.* ¶

31. In May and June 2019, PennyMac sent Plaintiff letters informing him that his homeowners insurance had expired and requested that he purchase homeowners' insurance. Plaintiff responded that he could not buy homeowner's insurance for vacant land. (*Id.* ¶ 32.) Therefore, PennyMac bought lender-placed homeowners' insurance coverage for the home and funded the insurance through the 2013 Loan's escrow account, resulting in an increased monthly payment. (*Id.* ¶¶ 35-36.)

On or about August 20, 2019, Plaintiff wrote complaint letters about PennyMac to the North Carolina Commissioner of Banks and the North Carolina Department of Insurance where he asserted that the lender placed hazard coverage was improper because PennyMac did not have an insurable interest in the dwelling on which insurance coverage was placed. (*Id.* ¶ 37.) PennyMac responded with a letter explaining that (1) while the Deed of Trust was prepared with the Vacant Lots only in the legal description, Johnson's loan application states that the purpose of the loan was to refinance a then-existing loan encumbering the house on Lots 16 and 18, and (2) PennyMac had made a title insurance claim to resolve the drafting error in the Deed of Trust's legal description. (*Id.* ¶ 39.) In addition, PennyMac also stated that it would not seek payment for homeowners insurance premiums from Plaintiff until the title issue was resolved and that it would remove the insurance premium from Plaintiff's escrow account. (*Id.* ¶ 39.)

In January 2020, PennyMac, through Blanco and its agent, Chad Archer ("Archer"), commenced an action in Forsyth County District Court to reform Plaintiff's Deed of Trust to include the Vacant Lots and Lots 16 and 18. (*Id.* ¶ 2b, 43.) On February 21, 2020, Plaintiff filed a counterclaim/third-party claim against PennyMac, among others, asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in particular 18 U.S.C. § 1962(c) & (d), against all defendants, as well as claims for breach of contract and violation of the Fair Debt

Collection Practices Act ("FDCPA") against PennyMac, and removed the entire action to the Middle District of North Carolina.[3] (*See PennyMac Loan Services, LLC. v. Johnson*, Case No. 20-cv-175 (M.D.N.C).)

On January 17, 2022, PennyMac, through Blanco, offered to voluntarily dismiss the Forsyth County District Court case with prejudice if Plaintiff paid off the loan balance of the Note, totaling $273,000. (*Id.* ¶ 53(a).) Plaintiff accepted PennyMac's offer and wired PennyMac the total loan balance to pay it off in full. (*Id.* ¶ 53(c), (f).) Contrary to its agreement with Plaintiff, on March 10, 2022, PennyMac filed a Voluntary Dismissal without prejudice in the Forsyth County case.[4] (*Id.* ¶ 54.) PennyMac and Blanco claimed they knew nothing about the offer to dismiss the case with prejudice and that Archer did not have the authority to obligate PennyMac to file a dismissal with prejudice. (*Id.* ¶ 55.)

Plaintiff's first cause of action for Breach of Unilateral Contract Accompanied by Fraudulent Acts and second cause of action for Fraud in the Inducement to Enter a Unilateral

---

[3]     As a threshold matter, the Report includes and considers matters outside of Plaintiff's amended complaint. The Court takes judicial notice of the parties' previous judicial determination without converting this matter to a summary judgment motion. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record.") That said, in the Middle District of North Carolina case, Plaintiff amended his initial counterclaim. The Middle District of North Carolina remanded the case to Forsyth County District Court, *PennyMac Loan Servs., LLC v. Johnson*, 2021 WL 861530, at *7 (M.D.N.C. Mar. 8, 2021), where it was later transferred to the Forsyth County Superior Court. Defendants moved to dismiss the counterclaims and Plaintiff moved to further amend his counterclaims, to which Defendants objected. On May 24, 2021, the Forsyth County Superior Court denied Plaintiff's motion for leave to amend his counterclaims as futile and dismissed with prejudice Plaintiff's counterclaims. Forsyth County Order (DE 9-1).

[4]     Following the dismissal of PennyMac's deed reformation claims, Plaintiff filed an appeal of the earlier dismissal of his counterclaims/third-party claims. The North Carolina Court of Appeals affirmed the trial court's dismissal of Plaintiff's counterclaims/third-party claims. *See PennyMac Loan Services, LLC v. Johnson*, 288 N.C. App. 363, 887 S.E.2d 99, 102 (2023). Plaintiff moved for the Court of Appeals to reconsider the panel's opinion en banc. On May 23, 2023, the motion was denied. (*See* DE 9-3.) Plaintiff then filed a Petition for Discretionary Review with the North Carolina Supreme Court, which was denied on December 13, 2023. *See PennyMac Loan Servs., LLC v. Johnson*, No. 145P23, 2023 WL 8716463, at *1 (N.C. Dec. 13, 2023).

Contract arise from Defendants' dismissal of the Forsyth County case without prejudice despite their agreement with Plaintiff to dismiss it with prejudice. (*Id.* ¶¶ 58-81.) Plaintiff's causes of action for Abuse of Process and Malicious Prosecution arise from Defendants' filing of the Forsyth County case. (*Id.* ¶¶ 82-102.) Johnson's remaining causes of action for Unfair and Deceptive Trade Practices and Civil Conspiracy arise from both the filing and the voluntary dismissal without prejudice of the Forsyth County case. (*Id.* ¶¶ 103-125.)

## **DISCUSSION**

Johnson's objection ostensibly raises these errors: 1) the complaint pleads sufficient facts to show PennyMac and Blanco are liable for the claims in the complaint (DE 44, pp. 4, 12), 2) the material facts identified in the Report are in part, inconsistent with and contrary to the alleged facts in the complaint (*id.* at 23), 3) the Report incorrectly referred to the settlement contract as a bilateral contract rather than a unilateral contract and that the place of performance was North Carolina instead of South Carolina (*id.* at 30-31), 4) the Report incorrectly applied the South Carolina choice of laws (*id.* at 31), 5) the Report incorrectly found that Johnson failed to allege damages redressable under a Fraudulent Inducement (*id.* at 34), 6) as for Johnson's abuse of process claim, the Report incorrectly found the purpose of PennyMac's reformation action was within its intended purpose and its willful acts were within its regular and legitimate function (*id.* at 44), 7) as for Johnson's malicious prosecution claim, Johnson alleges sufficient facts to support the malice and probable cause requirements (*id.* at 37), 8) as for Johnson's unfair trade practices claim, Johnson's facts support a claim for "in or affecting commerce" as required by the statute (*id.* at 38), and 9) as for Johnson's civil conspiracy claim, the Report incorrectly applied North Carolina law (*id.* at 39).

However, to be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—*that are at the heart of the parties' dispute*.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of *specific* objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Turning first to Johnson's Fourth Objection, which will affect the outcome of Johnson's other objections, Johnson challenges whether the Report correctly applied South Carolina's choice of laws (DE 44, p. 31). Johnson offers no authority to support the error he claims. For instance, Johnson agrees with the Report that South Carolina's choice of law rules apply. (DE 44, p. 31.) That said, Johnson believes his Fraud in the Inducement to Enter a Unilateral Contract (Count II) and Civil Conspiracy (Count VI) claims should be governed under South Carolina law and not North Carolina as recommended in the Report. Briefly, the Report correctly states that,

> Contract claims are governed by the law of the state where the contract at issue was formed [and] where a contract's formation, interpretation, or validity is at issue. *Witt v. Am. Trucking Associations, Inc.*, 860 F. Supp. 295, 300 (D.S.C. 1994) (citing *O'Briant v. Daniel Constr. Co.*, 279 S.C. 254, 305 S.E.2d 241, 243 (1983)). However, where performance is at issue, the law of the place of performance governs. *Id.* (citing *Livingston v. Atlantic Coast Line R.R. Co.*, 176 S.C. 385, 180 S.E. 343, 345 (1935)).

(DE 41, 9.) The Report correctly found that Plaintiff alleges that Defendants failed to perform their part of the contract as agreed because they dismissed the Forsyth County action without

prejudice instead of with prejudice. Plaintiff's amended complaint proffers no inference suggesting Defendants dispute the contract's formation, interpretation, or validity. Therefore, since the performance of the contract is at issue, the law of the place of performance governs, which was North Carolina. The contract involved payment of a loan underlying the deed of trust against North Carolina property in exchange for dismissing the North Carolina case. Therefore, North Carolina law applies to Plaintiff's Fraud in the Inducement to Enter a Unilateral Contract (Count II) and Civil Conspiracy (Count VI), and Johnson's objection is overruled.[5]

As for Johnson's First, Second, Fifth, Sixth, Seventh, and Eighth objections, they principally assert the factual sufficiency of his complaint regarding his six causes of action. The Court notes that Johnson has restated the arguments from this brief in opposition to the motion to dismiss. However, he has not addressed the purported errors in the Report. For example, as it relates to his claims against PennyMac for Breach of a Unilateral Contract Accompanied by Fraudulent Act and Fraud in the Inducement to Enter a Unilateral Contract claims, Plaintiff explicitly incorporates by reference his response in opposition to Defendant PennyMac's Motion to Dismiss on the "(1) identification of the facts . . . (2) identification of the **S.C. law** to be applied . . . and (3) application of the identified **S.C. law** to the identified facts" and then restates the same subparagraphs under an "Application" subheading from his response in opposition. (DE 44, pp. 4-7, compare with DE 31, pp. 12-15, 19-21) (emphasis in original.) Again, for his remaining claims against PennyMac for Abuse of Process, Malicious Prosecution, Unfair or Deceptive Trade Practices pursuant to N.C.G.S. § 75-1.1, et al., and Civil Conspiracy, and for his claims against

---

[5] As for Johnson's Third objection, which claims the Report incorrectly referred to the settlement contract as a bilateral contract rather than a unilateral contract and that the place of acceptance and performance was North Carolina instead of South Carolina (DE 44, pp. 30-31), the Court overrules these objections given the ruling on choice of law. The Court also notes that the Report does not address whether the settlement contract was bilateral or unilateral, and the word bilateral does not appear in the Report.

Blanco, Johnson repeats the same pattern and practice of incorporating his response in opposition to PennyMac (DE 31) or Blanco's (DE 37) motion to dismiss, as applicable, and repeats the subparagraphs under the "Application" subheading from his response. Furthermore, Plaintiff restates, often word for word, various arguments made in his opposition briefs. That said, the Report ably and comprehensively addresses Johnson's six causes of action, noting the deficiencies with each claim. Notably, the Report states:

> With respect to his first cause of action, Breach of a Unilateral Contract Accompanied by Fraudulent Act, it well settled that "North Carolina does not recognize a cause of action for breach of contract accompanied by fraudulent acts." *Curtis v. Café Enterprises, Inc.*, No. 5:15-cv-0032- RLV-DSC, 2016 WL 6916786, at *10 (W.D.N.C. Nov. 11, 2016) (citing *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992)).
> 
> * * *
> 
> For Plaintiff's second cause of action, Fraud in the Inducement to Enter a Unilateral Contract, . . . Plaintiff fails to allege damages [other than attorney's fees and costs spent defending the action] redressable under a fraudulent inducement cause of action because he is in the same position he would be in if he had received what was promised–dismissal with prejudice.

(DE 41, pp. 13-14.) The Report also said Johnson's Abuse of Process claim is based on an allegation that Defendants' ulterior purpose was to force Plaintiff to pay for hazard insurance. But the North Carolina Court of Appeals specifically held in Johnson's appeal of the dismissal of his counterclaims that applicable federal law allowed PennyMac to assess Plaintiff for force-placed hazard insurance and that PennyMac had a "reasonable basis" to believe that its Mortgage Loan with Plaintiff required him to maintain such insurance on the property at issue in PennyMac's deed reformation action. (*Id.* p. 16, citing *PennyMac Loan Services, LLC v. Johnson*, 288 N.C. App. 363, 370-71, 887 S.E.2d 99, 105-06, (2023).)

As for malice, lack of probable cause, or special damages in Johnson's Malicious Prosecution claim, the Report relied on the North Carolina Court of Appeals' decision involving Johnson and PennyMac to find Johnson's factual claims for malice and probable cause to be

insufficient. (DE 41, p. 18, n 8-9.) Equally, as for Johnson's Unfair or Deceptive Trade Practice claim, the Report noted that

> the acts alleged are not, by law, 'in or affecting commerce.' Section 75-1.1(b) of the North Carolina General Statute provides that 'commerce' 'does not include professional services rendered by a member of a learned profession.' The learned profession exception from the definition of commerce applies if the person or entity performing the alleged act is a member of a learned profession, and the conduct in question is a rendering of professional services. *Reid v. Ayers*, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000). Both of the acts alleged by Plaintiff were performed by Blanco on behalf of PennyMac in its role as counsel for PennyMac. The practice of law is a learned profession, and a law firm and its attorneys are members of a learned profession. *Moch v. AM Pappas & Assocs., LLC*, 251 N.C. App. 198, 207, 794 S.E.2d 898, 903 (2016). 'Although no bright line exists, . . . the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role.' *Reid v. Ayers*, 138 N.C. App. at 267, 531 S.E.2d at 236.

(DE 41, p. 20.) This objection is thus overruled.

Lastly, as for Johnson's Civil Conspiracy claim, the Report notes that "North Carolina does not recognize a separate civil action for civil conspiracy, but rather, "civil conspiracy is premised on the underlying act." (*Id.* quoting *Harris v. Matthews*, 643 S.E.2d 566, 571, n. 2 (N.C. 2007).) Since Johnson has not sufficiently alleged abuse of process or malicious prosecution, this claim must fail. Accordingly, Johnson's objection does not offer any authority to refute these findings or conclusions, and so his objections are overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 41) and incorporates it herein.

It is, therefore, **ORDERED** that Defendant PennyMac Loan Services, LLC's Motion to Dismiss (DE 17) and Defendant Blanco Tackberry, & Matamoros, P.A.'s Amended Motion to Dismiss Plaintiff's Amended Complaint (DE 24) are granted, all other motions are terminated as moot, and this case is dismissed in its entirety.

**AND IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 12, 2024

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.